## Long, et al., Appellants, *v.* Phillips.

*Statutes—Implied repeal—Act of June 4, 1901, P. L. 364—Taxes —Levy and collection—Unseated land.*

1. It is a rule of statutory construction that an earlier law will be repealed by implication by an act covering the entire subject matter of the former law, and manifestly intended as a substitute for it. But this rule is founded on presumption of legis-

lative intent, and will not apply where a contrary intent is clearly apparent.

2. The Act of June 4, 1901, P. L. 364, relating to the practice and procedure for the filing, collection and extent of tax and municipal claims was intended to cover the entire subject matter of the former law on that subject, and to repeal acts inconsistent therewith. That statute, however, does not contain any provisions for the collection of taxes on unseated land, for which there has been a statutory system in operation for more than a century, entirely distinct from that enacted for the collection of taxes on other subjects. It expressly repealed some two hundred statutes on the subject of taxation, but did not expressly repeal any relating to the collection of taxes on unseated lands and was not intended to repeal such statutes by implication.

3. In an action of trespass to recover damages for cutting and carrying away growing timber, where the plaintiffs' title depended upon a sale for taxes due upon the land as unseated, such sale was properly made under the statutes existing prior to the Act of June 4, 1901, P. L. 364.

Argued April 23, 1913. Appeal, No. 90, Jan. T., 1913, by plaintiffs, from judgment of C. P. Huntingdon Co., May T., 1912, No. 24, on verdict for defendant in case of A. L. Long, H. F. Deitz and David Hoover v. J. H. Phillips. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for cutting and carrying away growing timber. Before WOODS, P. J.

The plaintiffs claimed title through a sale for taxes due on unseated lands, and assessed after the passage of the Act of June 4, 1901, P. L. 364. The defendant had a paper title.

The opinion of the Supreme Court states the facts.

Verdict for defendant by direction of the court, and judgment thereon. Plaintiffs appealed.

*Error assigned,* among others, was in directing a verdict for defendant.

*H. H. Waite* and *James W. Shull,* with them *James*

*W. Woods,* for appellants.—The legislature has provided a complete consistent classified system of assessment and collection of taxes on unseated lands, differing in manner and form of procedure for assessment and collection of taxes from that upon all other classes of property, which has not been affected by the Act of June 4, 1901, P. L. 364: Cunningham v. Neeld, 198 Pa. 41; Day v. Swanson, 236 Pa. 493; Searight's Estate, 163 Pa. 218; Com. v. Gilkeson, 18 Pa. Superior Ct. 516; Jefferson County v. Reitz, 56 Pa. 44; Walters's App., 70 Pa. 392; Com. v. Summerville, 204 Pa. 300; McCleary v. Allegheny County, 163 Pa. 578; Com. v. Lehigh Valley R. R. Co., 104 Pa. 89; Lutz's Case, 8 Pa. C. C. R. 133; McHenry's Petition, 6 Pa. Superior Ct. 464; Morris v. Del. & S. Canal Co., 4 W. & S. 461; Easton Bank v. Com., 10 Pa. 442; Dickinson v. Dickinson, 61 Pa. 401; Bell v. Allegheny County, 30 W. N. C. 193; Seifried v. Com., 101 Pa. 200; Com. v. DeCamp, 177 Pa. 112; Omit v. Com., 21 Pa. 426; Philadelphia v. Kingsley, 5 Pa. C. C. R. 75; Brook v. Kaufman, 6 Pa. D. R. 513; Marquette v. Berks County, 3 Pa. Superior Ct. 36.

*Thomas F. Bailey* and *John D. Dorris,* for appellee.— The Act of April 3, 1804, 4 Sm. Laws 201, and its supplement, the Act of March 13, 1815, 6 Sm. Laws 299, which are the basis of the system of selling unseated lands for taxes, were repealed by the general repealing clause of the Act of June 4, 1901, P. L. 364, and, therefore, the system of the sale of unseated land for taxes, as established by those acts, was not in force in 1902, when the taxes were assessed against the land, afterwards sold for these taxes: Day v. Swanson, 236 Pa. 493; Evans v. Moore, 20 Pa. D. R. 373; Yocum v. County Treasurer, 9 Justices' Law Repr. 125; Davis v. Rocks Coal & Coke Co., 21 Pa. D. R. 649.

OPINION BY MR. JUSTICE MESTREZAT, May 22, 1913:

The single question in this case is whether the Act

of June 4, 1901, P. L. 364, relating to the practice and procedure for the filing, collection and extent of tax and municipal claims repealed the prior acts of assembly regulating the practice and procedure in collecting taxes on unseated lands in the Commonwealth. The learned court below held that such was the effect of the Act of 1901 which necessarily resulted in a verdict and judgment in the present case for the defendant. The plaintiffs have taken this appeal.

This action is trespass to recover damages for cutting and carrying away growing timber on four tracts of land in Huntingdon County. The rights of the parties depend on the title to the land. The plaintiffs claim title through a sale made for taxes due on the land as unseated. The defendant has a paper title.

It is a rule of statutory construction that an earlier law will be repealed by implication by an act covering the entire subject matter of the former law, and manifestly intended as a substitute for it. But this rule is founded on the presumption of legislative intent and will not apply where a contrary intent is clearly apparent: Commonwealth v. Brown, 210 Pa. 29. There is no specific repeal by the Act of 1901 of the statutes regulating the levying and collection of taxes on unseated land. It is, however, contended by the appellees that by the Act of 1901 it was the intention of the legislature to repeal the unseated land tax legislation, and that it did so, not only by implication but by expressly repealing all acts appertaining to the same subject, and declaring it to be the intention that the act should furnish a complete and exclusive system regulating the subject.

It is undoubtedly true, as the act declares, that it was the intention to provide a complete and exclusive system of law regulating the subject with which the statute deals, and that in all cases where it is applicable the act is the exclusive remedy and repeals all legislation in conflict with it. It is equally apparent, however, that

it was not the legislative intent in the enactment of 1901 to strike down and abrogate the laws regulating the collection of taxes to which it has and can have no application. The question, therefore, in the present case, as in all cases where the act is invoked as a repeal of former legislation, is, does it deal with and relate to the practice and procedure of the taxing system under consideration.

For more than a century this State has had in operation a statutory system for the collection of taxes on unseated lands. It is complete in itself, separate and distinct from that enacted for the collection of taxes on other subjects, and provides in detail for levying and collecting such taxes. Legislation relating to the subject has dealt with it in separate acts to the exclusion of the statutes imposing taxes on other property. The mode of procedure for the assessment and collection of the tax is different from that on other classes of property. As recent as 1885 the legislature indicated its purpose to preserve the former distinction between the procedure for the collection of taxes on seated and unseated lands in the passage of the Act of June 25th of that year, "regulating the collection of taxes in the several boroughs and townships of the Commonwealth," which provides that taxes charged upon unseated lands shall not be collected by the collectors of taxes, but shall be certified and returned by the several authorities levying the same to the county commissioners to be collected as heretofore. This is a distinct recognition by the legislative department of the government of the intention to continue the two separate systems for the collection of taxes. By judicial construction, the statutes dealing with the subject have been moulded into a complete and efficient system for both the practice and procedure in the collection of taxes on such lands, and we do not think it was the intention to repeal them by the Act of 1901. It must be presumed that the legislature knew of the statutes on that subject, and the fact that they were

not included in the more than two hundred statutes specifically and expressly repealed is strongly evidential that it was not the intention to interfere with or supply the unseated land system of taxation.

There is further evidence and conclusive, we think, that in the passage of the Act of 1901 it was not the intention to repeal the laws regulating the collection of taxes on unseated lands. It certainly will not be presumed that it was the legislative intent to repeal the laws regulating the collection of taxes where authorized and required to be assessed against any species of property where no other procedure or remedy is substituted. The Act of 1901 makes no adequate provision for filing or enforcing a lien for taxes on unseated lands, and if it repeals the former legislation regulating the subject, neither a lien for such taxes nor its enforcement is provided for, nor is there any provision in the act for the sale of unseated lands for the payment of taxes. The act provides that a lien may be filed for taxes, and that the claim shall set forth "the name of the owner of the property against which it is filed." "Owner" is defined in the act, which says that it "means the person or persons in whose name the property is registered, if registered according to law; and in all other cases means any person or persons in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, if any, and if not, then the reputed owner or owners thereof, in the neighborhood of such property." It is common knowledge with those familiar with the subject that it frequently occurs that the owner's deed is not recorded, his name is not registered, he is not known, no one is in actual possession, and there is no apparent owner or reputed owner in the neighborhood of the property. How, then, in such cases, can a claim for taxes be filed against the property under the act so as to make it a valid lien? Under former legislation, the return by the officer of unseated lands was required to be made against the original warrantee, and a sale on such

return passed the title regardless of who was the real owner. But the Act of 1901 contains no such provision, and a sale on a lien not entered in strict compliance with its provision will not vest title in the purchaser. The proceeding for the assessment and collection of taxes on unseated lands is strictly in rem and not in personam. As evidence of a like intention not to repeal the former legislation there is no provision for enforcing the lien in such cases by the scire facias required by the act. The writ must be issued against a defendant and he is permitted to file an affidavit of defense. The service of the writ by the sheriff, required by the act, contemplates that one or more defendants shall be named in the writ. In the instances noted above, however, no one is or can be named as defendant in the lien, and necessarily no one can be named as defendant in the writ which must follow the lien. It is clear, therefore, that there is no adequate provision in the Act of 1901 for the collection of such taxes. We cannot regard the failure to supply these omissions in the Act of 1901 as an oversight, but as an indication of the legislative intent not to deal with the subject.

We held in Day v. Swanson, 236 Pa. 493, that a tax sale of seated land made in pursuance of Section 41 of the Act of April 29, 1844, P. L. 486, is invalid inasmuch as that section of the act was repealed so far as seated land was concerned by the Act of 1901. The earlier provisions of the Act of 1844 provided what property should be the subject of taxation for the purposes named therein, and the forty-first section directed how the property should be sold to enforce payment of the taxes on seated land, viz: "as unseated lands are now sold."

The section does not provide for the collection of taxes on unseated land nor for the sale of such land for that purpose, but simply adopts the procedure for the sale of unseated lands for the payment of taxes as the procedure to be used in the sale of seated lands. Full provision is made for the sale of unseated land for the

payment of taxes in the Acts of April 3, 1804, 4 Sm. L. 201, the Act of March 13, 1815, 6 Sm. L. 299, and their supplements. They provide that the county treasurer, every two years, shall make public sale of unseated lands for unpaid taxes in the manner therein directed, and make and execute deeds in fee simple therefor. They also provide for taking a surplus bond, redemption of the land, etc. These several acts provide a complete system for the levy and collection of taxes on unseated land, and the Act of 1844 simply adopts the system for the collection of unpaid taxes on seated land when the owner neglects or refuses to pay, and sufficient personal property cannot be found on the land to pay the taxes.

The passage of the amendatory Act of March 26, 1903, P. L. 63, declaring that the act shall not apply to taxes assessed upon unseated land, does not aid in the judicial construction of the Act of 1901. If it has any significance, however, it is that the legislature immediately succeeding the one that passed the Act of 1901 was convinced that the latter act was inapplicable to the collection of taxes on unseated land.

We are of opinion that the Act of June 4, 1901, P. L. 364, was not intended to and did not repeal former legislation for the collection of taxes on unseated land.

The judgment is reversed and a new venire awarded.