**HARRY L. SHEINMAN & SONS, Inc., v. SCRANTON LIFE INS. CO.**

No. 7822.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 6, 1941.

Decided Jan. 16, 1942.

William J. Fitzgerald, of Scranton, Pa. (Robert E. O'Brien and Kelly, Fitzgerald & Kelly, all of Scranton, Pa., on the brief), for appellant.

Thomas D. Caldwell, of Harrisburg, Pa. (Caldwell, Fox & Stoner, of Harrisburg, Pa., on the brief), for appellee.

Before CLARK and JONES, Circuit Judges, and GANEY, District Judge.

JONES, Circuit Judge.

The question here involved is whether the plaintiff, as beneficiary of a double indemnity life insurance policy, made out a case, within the requirements of the policy, sufficient to support the jury's finding that the insured died because of "bodily injuries effected solely through external, violent or accidental means" and not "from bodily * * * disease * * * or * * * infirmity; * * *."

The insured fell in front of a subway train in New York City. As a result, he suffered a fractured skull and his death ensued immediately. The insurer paid the face amount of the policy for death but refused to pay the double indemnity provided for accidental death. The insurance company first defended against liability for the additional sum on the ground that the insured had deliberately jumped in front of the train and, at trial, called a witness who testified to such effect. The issue of intentional death was fairly submitted by the trial court in a charge to which no exceptions were taken and the defendant admits (Appellant's Brief, p. 4) that, as a consequence of the jury's verdict for the plaintiff, "suicide is out of the case". The sole remaining question, therefore, on the defendant's present appeal is whether the evidence offered by the plaintiff was legally sufficient to support a finding that the insured's death resulted from exclusively accidental cause.

The plaintiff produced a witness who testified that shortly before the insured fell in front of the train he had been sitting on a bench in the subway station in a "humped" position, resting his head in his hands. To the witness the insured appeared sick at the stomach as though wanting to vomit. He arose and walked in an unsteady manner ("not staggering") to the

edge of the platform and in so doing passed within five to six feet of the witness. At the same time a train was coming into the station and, as the insured reached the edge of the platform, he slumped over into the pathway of the oncoming train, which, still moving rather rapidly, was then eight to twelve feet away from him. According to the witness the insured "didn't jump off the platform". From these facts the insurance company contends that the insured's death was the result not of an accident but of disease and the injuries suffered in a fall caused by disease.

The case was tried below and argued here on counsel's assumption that the rights of the parties are to be determined according to the law of Pennsylvania. The defendant states in its brief on appeal (Appellant's Brief, p. 15) that "in a case like this Pennsylvania cases are controlling on the Federal courts". However, from the facts appearing of record it would seem that the law of New York controls. But, whether the law of New York or of Pennsylvania be applied, the result is the same, for the pertinent rule is the same in each of those states.

█ In general, it has been held that the obligations of a contract of insurance are to be enforced according to the law of the place of contracting. Marcus v. Heralds of Liberty, 241 Pa. 429, 433, 88 A. 678; Restatement, Conflict of Laws (1934) § 346; 2 Beale, Conflict of Laws (1935), p. 1210. In turn, the place of contracting is to be ascertained by the law of the forum. Restatement, Conflict of Laws (1934) § 311. Consequently, it is incumbent upon a federal court to follow the rule of conflicts which would be applicable if the case were pending before a court of the state wherein the federal court is sitting. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477; Waggaman v. General Finance Co. of Philadelphia, Pennsylvania, Inc., 3 Cir., 116 F.2d 254, 257. The rule of conflicts, therefore, to be followed by the trial court in the first instance was the rule of Pennsylvania. There, an insurance contract is deemed to have been made at the place of delivery; and, thus, the place of contracting is determined.

█ While there was no direct proof in the instant case as to the actual place of delivery of the policy, it does appear that, throughout the time here material, the insured was a resident of Brooklyn, New York; that the first part of the application for the policy was filled in and signed by him in Philadelphia, where his signature was witnessed by an agent for the insurance company; that the second part of the application (medical examination) was completed in New York City; that the application was received by the insurance company at its home office in Scranton, Pennsylvania; and that a policy issued which provided that it should not be binding "unless and until *delivered* to the insured during his lifetime and sound health; nor unless and until the first premium above required has been received and accepted by the said Company; * * *." There was no evidence that the policy had been transmitted directly to the insured by mail nor that there had been any other acceptance of the policy than by delivery. In somewhat similar circumstances it has been held that the last operative act (here, the delivery of the policy) is presumed to have taken place at the residence of the insured. White v. Empire State Degree of Honor, 47 Pa. Super. 52, 57. Accordingly, the law governing the interpretation of the contract now under consideration is that of New York.

█ The law of New York not having been proven at trial, a Pennsylvania court in like situation could have taken judicial notice of the pertinent New York law. Act of 1939, P.L. 42, 28 P.S. § 291 et seq.; Astrin v. Metropolitan Life Insurance Co., 341 Pa. 120, 125, 17 A.2d 887; United Factors Corp. v. Mogul, 142 Pa.Super. 506, 510, 16 A.2d 735. So ascertaining the law of New York applicable to the instant case, we find a direct ruling in the case of Silverstein v. Metropolitan Life Insurance Co., 254 N.Y. 81, 171 N.E. 914, with respect to what constitutes bodily disease or infirmity within the meaning of those terms as employed in an exclusory clause of an accident insurance policy. In the Silverstein case, where the policy excepted "accident, injury, disability, death, or other loss caused wholly or partly by disease or bodily * * * infirmity * * *", the insured, while lifting a can of milk, had fallen, the can hitting him in the abdomen. A perforation of the intestines at the junction of the duodenum and the stomach occurred. As a result of the perforation peritonitis, which caused death, developed. At the point of perforation there had been a small duodenal ulcer. On the question as to whether the

insured's death was the result of the accidental fall to the exclusion of all other causes or whether it was caused or contributed to by the morbid duodenal condition, Chief Judge Cardozo said at page 915 of 171 N.E.:

"In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. * * *

"A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency. * * *

"An ulcer as trivial and benign as an uninfected pimple is at most a tendency to an infirmity, and not an infirmity itself.

"Any different construction would reduce the policy and its coverage to contradiction and absurdity."

The Supreme Court of Pennsylvania has expressly stated that the germane rule of that state is consistent with the New York rule as expressed in the Silverstein case, supra. See Real Estate Trust Co. of Philadelphia v. Metropolitan Life Insurance Co., 340 Pa. 533, 541, 17 A.2d 416.

From the evidence adduced by the plaintiff in the instant case it was for the jury to say whether the insured's death was the result of injuries effected solely through accidental cause. That the fall was unintentional is conceded; and it is equally indisputable that the injuries were violently and externally inflicted and were sufficiently grave to cause death. Such circumstances fully warranted the jury in finding that the accidental fall produced the injuries which resulted in the insured's death. See Lennig v. New York Life Insurance Co., 3 Cir., 122 F.2d 871; Real Estate Trust Co. of Philadelphia v. Metropolitan Life Insurance Co., supra, 340 Pa. at page 538, 17 A.2d 416; Kelly v. Prudential Insurance Company of America, 334 Pa. 143, 148, 6 A.2d 55; Wainstein v. Equitable Life Assurance Society, 318 Pa. 428, 432, 178 A. 502; Jones v. Commonwealth Casualty Company, 255 Pa. 566, 570, 571, 100 A. 450; Taylor v. General Accident Assurance Corporation, Limited, 208 Pa. 439, 441, 57 A. 830. While the meaning of the terms in the contract is to be determined in the instant case according to the law of New York, the legal sufficiency of the evidence to show compliance with the requirements of the contract is to be determined by the law of the forum, federal jurisdiction of the case resting, as it does, upon diversity of citizenship. Lennig v. New York Life Insurance Co., supra, 122 F.2d at page 872. On the question of the sufficiency of the evidence to establish accidental death, the case of DeReeder v. Travelers Insurance Company, 329 Pa. 328, 198 A. 45, upon which the appellant so largely relies, is clearly distinguishable, as we pointed out in the Lennig case, supra, 122 F.2d at page 874.

Opposed to the inference of accidental death which was proper for the jury to draw from the evidence in the case, there was nothing more than the testimony of a lay witness, based on a casual and very brief observation of the insured, to the effect that the latter appeared to be sick at the stomach as if wanting to vomit. Giving this testimony its fullest import most favorable to the defendant's contention, it was at best matter for the jury's consideration. Certainly the court could not have said as a matter of law that the insured was suffering from bodily disease or infirmity which barred recovery under the policy for accidental death. Silverstein v. Metropolitan Life Insurance Co., supra. The learned trial court therefore properly refused the point reserved on the defendant's motion for judgment on the whole record, which is the only matter assigned for error.

The judgment of the District Court is affirmed.