[Civ. No. 13278. First Dist., Div. Two. Apr. 14, 1947.]

FRANCES GUIDICI, Appellant, v. PACIFIC AUTOMO-
BILE INSURANCE COMPANY, Respondent.

Francis T. Cornish for Appellant.

Harold H. Cohn for Respondent.

DOOLING, J.—Plaintiff appeals from a judgment in
favor of defendant. The case was submitted upon an agreed
statement of facts from which the following facts appear:
Earl Clifford operated an automobile repair and storage
garage in the city of Oakland. Prior to January 12, 1944,
J. A. Palmquist "left his automobile with said Earl Clifford
for the purpose of repairing the carburetor thereof, and on
January 12, 1944, the said Earl Clifford had removed the
carburetor and placed it in a noninflammable liquid for
the purpose of cleaning said carburetor and said carburetor
and said fluid were placed in a pan over a gas hot plate to

boil the fluid. . . . This gas plate was on a wooden bench four feet from the right side of said automobile. Earl Clifford was in another part of the building on some other work and had been away from said automobile for twenty minutes when upon returning he found the fluid had boiled over onto the wooden bench, caught fire and both the automobile and building were burning therefrom." The automobile was damaged in the sum of $1,215 and Palmquist sued Clifford and recovered judgment against him for that amount and costs.

Clifford carried a policy of liability insurance with defendant herein insuring Clifford under Coverage B against liability for property damage in the operation of his place of business. Defendant denied liability to pay the judgment recovered by Palmquist against Clifford by reason of the provision of the policy providing the exclusion of liability hereinafter discussed. Palmquist assigned his claim to plaintiff and plaintiff brought this action on the policy which resulted in the judgment appealed from. A single point is presented for decision.

Under the heading "Exclusions" the policy contains the following provision:

"This policy does not apply: . . .

"(j) under coverage B, to property owned by, rented to, leased to, in charge of, or transported by the insured."

The single question presented is whether at the time of its damage by fire Palmquist's automobile was "in charge of" Clifford within the meaning of this exclusionary provision.

Identical language in similar policies has been construed by the courts of other jurisdictions. The earliest of these cases called to our attention is *State Automobile Mut. Ins. Co.* v. *Connable-Joest, Inc.*, 174 Tenn. 377 [125 S.W.2d 490]. In that case an automobile had been delivered to the insured for the purpose of being greased and oiled and fell off an elevated grease rack in the insured's place of business. The policy of insurance contained an exclusionary provision of "damages to or destruction of property owned, rented, leased, in charge of, or transported by the assured." The Supreme Court of Tennessee in holding that the automobile was "in charge of" the insured at the time of the casualty said at page 492 [125 S.W.2d]:

"It is contended by counsel for plaintiff that the phrase 'in charge of' is synonymous with the associated words 'owned, rented, leased, . . ., or transported,' contained in the exclusions clause, and was intended to distinguish claims for damages to customers' automobiles from damages to automobiles in charge of the insured by reason of ownership, lease, rental, or while being transported by the insured. The construction contended for would do violence to the plain and unambiguous language of the contract. As is usual in policies of this character, the general coverage is first set forth and then the exclusions. The latter cannot, of course, be held to be in conflict with the former. The limitations of the insurance are found in the exclusions. The intent of the parties as ascertained from the contract, was to exclude the insurance company from liability for claims for damage to property under the control and management of the insured, whether by virtue of ownership, lease, rental, or having charge of the property under any other authority, or in any other capacity."

In *Clark Motor Co.* v. *United Pac. Ins. Co.,* 172 Ore. 145 [139 P.2d 570] a customer's automobile was damaged while being towed by the insured. The policy contained an exclusionary provision identical with the one before us. The Supreme Court of Oregon said, pages 572-573 [139 P.2d]:

"If we were to look only to the 'Insuring Agreements' of the policy, there would be no doubt as to coverage as the automobile 'wrecker' at the time of the accident was being used in connection with the operation of the business in which the insured was engaged. However, in construing the policy, we can not exclude from consideration the plain and unambiguous language of the exclusion clause. There may be some question as to whether the towing of the car was 'transportation' within the meaning of the policy, but we think there can be no doubt that at the time Hallock's car was damaged it was 'in charge of' the assured and therefore not covered by the policy: *State Automobile Mut. Ins. Co.* v. *Connable-Joest, Inc.,* 174 Tenn. 377, 125 S.W.2d 490; *Parry* v. *Maryland Casualty Co.,* 228 App.Div. 393, 240 N.Y.S. 105; *Root Motor Co.* v. *Massachusetts Bonding & Ins. Co.,* 187 Minn. 559, 246 N.W. 118; Berry on Automobiles, 7th Ed., vol. 6, sec. 6.657; Blashfield Cyc. of Automobile Law and Practice, Perm. Ed., vol. 6, sec. 4154; Appleman on Automobile Liability Insurance, p. 200.

"True, the exclusion clause greatly limits the liability of the insurer but it is not so repugnant to the 'Insuring Agreements' as to defeat the purpose of the policy and thereby lead to an absurd result. As said in Couch's Cyclopedia of Insurance, Vol. 1, sec. 187: '. . . an insurer ordinarily may insert as many exemption clauses in its policy as it sees fit, and the courts cannot change terms by judicial construction, even in the case of exemptions from liability, if the same are free from ambiguity and uncertainty as to meaning.'

"Cases involving exclusion clauses containing ambiguous language are not in point. Here the language is clear and certain. It may be that, in view of the limited number of employees of the insured who drove an automobile, that the policy was ill-advised and that one covering 'Automobile Storage Garage' would have better served its purpose but that is a matter of business judgment with which we can not be concerned.

"Counsel for the assured contends that each phrase of the exclusion clause is dependent upon the other and, when so considered, the words 'in charge of, or transported by the insured' refer only to property which the insured is using in connection with its business. In our opinion, such construction is not warranted by the language of the exclusion clause. It may be said with a reasonable degree of certainty that there is no decision of any Supreme Court involving the construction of a similar exclusion clause in a garage liability insurance policy which supports the contention of the assured in this case. Certainly no such decision has been cited and we have found none after diligent research."

The conclusion reached in these two cases is consistent with the clear meaning of the words "in charge of." Under the noun "charge" in Webster's New International Dictionary, Second Edition, Unabridged the phrase "in charge" is defined as follows: "a. Having the charge or care of something, esp. temporarily; as the officer or minister *in charge*." Among the synonyms of the word charge in the same work are given: "Custody," "keeping" and "management."

In common parlance a garage repair man to whom an automobile was entrusted for purposes of repair would unhesitatingly be said to be "in charge of" it.

Appellant cites three cases holding under their peculiar facts that the automobiles involved were not "in charge of" the several insureds. In *Cohen & Powell* v. *Great American Indemnity Co.*, 127 Conn. 257 [16 A.2d 354, 131 A.L.R. 1102], the Supreme Court of Errors of Connecticut passed upon the following situation, quoting from page 355 [16 A.2d]: "The insured sublet a definitely allocated space in this garage (the insured's) to the plaintiff for the storage of one truck. This space was reserved for the exclusive use of the plaintiff. He had keys to the outer doors of the garage with free access at all times. The truck was stored in this space almost nightly and its van, cab and ignition were then locked. The truck was damaged while it was so stored. The insured had no right or duty to repair, service, use, drive or exercise any dominion or control over the plaintiff's truck." The court in holding that the truck was not "in charge of" the insured said, page 355 [16 A.2d]:

"Neither the policy as a whole nor the exclusions other than that cited are helpful in interpreting this phrase 'in charge of'. While the word 'charge' has a very broad and varied meaning (*McLoughlin* v. *Shaw*, 95 Conn. 102, 107, 111 A. 62), a person or thing is not 'in charge of' an insured within the meaning of the policy unless he has the right to exercise dominion or control over it. This element is present in every illustration of the use of the phrase which comes to mind; for example, a nurse in charge of a child, a warden in charge of a prison, a caretaker in charge of an estate. *Steffe* v. *Old Colony R. Co.*, 156 Mass. 262, 264, 30 N.E. 1137; *People* v. *Gould*, 345 Ill. 288, 323, 178 N.E. 133; 20 Words and Phrases, Permanent Edition, 413. No illustration omitting this element has been suggested by the defendant by citation or otherwise. As the trial court said: 'Obviously the whole intendment of the policy is to insure Muriello against damage to the property, life and limb of others in connection with his motor transport business, but not to cover losses sustained by him with respect to property actually used or being transported by him.' The finding discloses no duty or obligation on the part of the insured with regard to the plaintiff's truck and finds affirmatively that he never did exercise nor was he authorized to exercise any dominion or control over it."

The facts of the case clearly distinguish it from the one before us. In the case decided by the Connecticut court the

owner of the truck was either a lessee or licensee for a consideration in occupying the space reserved to him in the garage and the possession of the truck was in no sense given to the garage owner. In our case the insured was a bailee of the truck under a bailment for purposes of performing services thereon of the type known as *locatio operis faciendi*. (6 Am. Jur. 144; 8 C.J.S. 243.) As such bailee he not only had the possession and control of the bailed automobile but the exclusive right of possession supporting a lien for his services until paid. (Civ. Code, § 3051.)

In *Sky* v. *Keystone Mut. Casualty Co.*, 150 Pa.Super. 613 [29 A.2d 230] the insured was driving plaintiff's automobile "without consent or permission of plaintiffs" when it was damaged. The court's holding that it was not "in charge of" the insured is based on the fact that his possession was wrongful and illegal the court saying, page 233 [29 A.2d] : "that when the act in question . . . refers to 'property of others in charge of the insured,' it does not mean mere 'possession'; and that property is not in charge of the insured unless he has the right to exercise dominion or control over it. . . . Admittedly, Kough (the insured) did not have permission or any right or authority to use plaintiffs' motor vehicle, and no duty or obligation had been imposed on him by the owners in connection therewith. He was a trespasser on the personal property of plaintiffs, and it cannot be said that he was 'in charge of' it. . . ."

The case is readily distinguishable from ours in which far from being a trespasser the insured was lawfully in possession as a bailee with the duty and obligation to perform services on the bailed car.

In *Moffett* v. *Pennsylvania Mfrs. Assn. Cas. Ins. Co.*, 137 Pa.Super. 569 [10 A.2d 579], the policy only applied while "automobiles are being operated by or are in charge of the Assured or employes of the Assured whose earnings are or will be included in the basis of premium compensation." The accident occurred while the automobile of the assured was being driven by a customer who was taking an automobile part to the customer's home at the assured's request. Since the customer was not an employee whose earnings were included in the premium compensation and neither the assured nor any such employee was in the car at the time of the accident the court held that since the customer was in charge of the automobile the liability fell outside the policy coverage. The case is not helpful on its facts.

 Appellant argues that all ambiguities in a policy of insurance are to be construed against the insurer. This is a truism well established. (*Sampson* v. *Century Indemnity Co.,* 8 Cal.2d 476, 478-9 [66 P.2d 434, 109 A.L.R. 1162].) But where a provision of the policy is clear and unambiguous it must be construed according to its plain meaning. (*Sampson* v. *Century Indemnity Co., supra,* p. 480; *Long* v. *West Coast Life Insurance Co.,* 16 Cal.2d 19 [104 P.2d 646]; *Coit* v. *Jefferson Standard Life Ins. Co.,* 28 Cal.2d 1 [168 P.2d 163].) In our judgment the words "in charge of" as applied to the facts of this case are too clear to admit of any extraneous aid in their construction.

 The crux of appellant's argument is found on page 12 of the opening brief:

"It is submitted that in order to have the property 'in charge of' the garage, the garage owner must not only have the right to exercise dominion over the property, but must, at the time it is damaged, be actually doing something to the property itself."

We cannot follow appellant in this refinement of reasoning. A bailee of property is in charge of it so long as he retains actual possession whether he is operating it or working on it or not.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.