Hugh Welborn, Trading as Hugh's Auto Sales, Plaintiff-Appellee, v. Illinois National Casualty Company, Defendant-Appellant.

Term No. 52–F–7.

■■■■■

■■■■■

Opinion filed May 2, 1952.
Released for publication June 5, 1952.

JOHNSON & JOHNSON, of Belleville, for appellant.

GOLDENHERSH & GOLDENHERSH, of East St. Louis, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

The plaintiff, Hugh Welborn, operates a garage in which automobiles are repaired. The defendant, Illinois National Casualty Company, insured him against liability for bodily injury (Coverage A) and property damage (Coverage B) arising out of operation of the garage. This court is called upon to decide whether the policy applies under the following facts:

Rufus Brown brought an automobile to plaintiff's garage, where it was destroyed by fire while under-

going repairs. In a suit against Hugh Welborn, he was held liable upon the ground that the damage was caused by the negligence of his agent and servant in repairing the car. The judgment was affirmed in this court, *Brown v. Welborn,* 338 Ill. App. 507.

The policy defines the operations covered and states the company will pay such sums as the insured may become liable to pay because of liability arising out of such operations. The definition follows, italics ours:

"The ownership, maintenance, occupation, or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and all operations either *on the premises* or elsewhere which are necessary and incidental thereto, *including repairs of automobiles* or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment thereof; and the *ownership,* maintenance, or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use."

The policy also stated a list of "Exclusions" of which the following is the basis of this controversy: "This policy does not apply: Under Coverage B, to property owned by, rented to, in charge of, or transported by the insured."

The precise wording of the general exclusion provision appears to be in direct conflict with the specifically defined operations which are declared covered. For example, it excludes property owned by the insured, while the specific coverage includes ownership of an automobile, used in other operations and even for pleasure use.

Appellant relies upon the exclusion of property "in charge of" the insured. We note that the policy purports to cover liability arising out of the repair of an automobile, and expressly includes operations *on the premises.* We agree with appellant that, when a car

67

is on the premises undergoing repairs, it is in charge of the insured in some sense of the words. Thus, it again appears that the exclusion conflicts with defined coverage.

█ In a case of this kind, there are two well recognized principles of construction of contracts which are pertinent. First, if the literal interpretation of one provision of an insurance policy results in an unreasonable or absurd result, and substantially defeats the object and purpose of the entire contract, it will be rejected and treated as inoperative. 29 Am. Jur. Insurance, sec. 163; 44 C. J. S. Insurance, sec. 298.

█ Second, the same authorities, and many others, assert the general contract rule of construction that the court should determine the intention from the whole agreement, and endeavor to give a meaning to all provisions, so far as possible, which will render them consistent and operative.

█ We are of the opinion that the latter rule is easily applied in this case, and that the key to the problem is the exclusion of property owned by the insured. If, while driving a car owned by him, he is involved in a collision, damage to his own car is ordinarily covered only by the type of insurance commonly known as "Collision and Upset," easily distinguished from coverage for his liability to the owner of any other vehicle involved in the collision.

If such an incident occurred, the policy declares it covers his liability whether his car was used in his business or for pleasure, but does not cover the car which he owned, by reason of the exclusion. This construction gives sensible meaning to both provisions. The defined coverage applies to his liability for damage to the property of another, while the exclusion pertains to his own personal loss from damage to his own property.

68

It is perfectly logical to treat a car which the insured had rented from another, as though it were his own, for purposes of exclusions. Likewise, if he borrowed a car from a friend, and was temporarily "in charge of" or transporting such car, the same reasoning should apply.

This reasoning is not limited to a car. It is equally applicable to a machine or other piece of equipment used in the insured's business. If such item is damaged by accident or negligence, it is excluded under the quoted clause, whether insured owns it, or has rented or borrowed it, or is transporting it. Thus, we treat the exclusion above quoted, which was one of eight exclusions, as though the terms in this paragraph have a related significance, so that they apply to property owned by insured, or which have a status which is logically treated the same as ownership for the purposes of the policy.

We conclude that, even though insured had some kind of charge of Rufus Brown's car, on the premises undergoing repairs, he was not "in charge of" such car in the sense used in the exclusion, which pertained to a status similar to ownership as distinguished from mere possession for repair operations.

Appellant's argument refers to the doctrine of *res judicata* and estoppel by verdict as determinative of the construction of the policy in this case, reference being made to the prior suit against the insured. The argument is irrelevant; the company was not a party to that suit and the policy was not involved. It would probably have been an impropriety even to mention the policy in that case, so that the effect of its terms could not possibly have been adjudicated.

The trial court entered judgment in favor of the insured and against the Illinois National Casualty Company in the sum of $1,180.80 which was the amount the insured actually paid in settlement of his liability, al-

though the judgment against him was for a larger amount. The amount is within the limits fixed by the policy under Coverage B. The judgment is affirmed.

*Judgment affirmed.*

CULBERTSON, P. J. and BARDENS, J., concur.