McLOUTH STEEL CORP.

v.

MESTA MACHINE CO.

FOSTER et al.

v.

HARTFORD ACC. & INDEMNITY CO. et al.

Civ. A. No. 12667.

United States District Court
E. D. Pennsylvania.

Oct. 6, 1953.

Rawle & Henderson, Philadelphia, Pa., for McLouth Steel Corp.

White, Williams & Scott, Philadelphia, Pa., for Mesta Machine Co.

Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Edgar A. Jonas and Frederick C. Jonas, Chicago, Ill., for J. M. Foster.

Thomas E. Comber, Jr., Philadelphia, Pa., for Hartford Acc. & Indemnity Co.

Daniel & Temin, Philadelphia, Pa., for Landis Tool Co.

KIRKPATRICK, Chief Judge.

The various conflicting claims presented to the Court in this action all arose as the result of an accident in which a roll-grinder, a large and expensive piece of machinery which McLouth had bought from Landis, the manufacturer, was badly damaged. McLouth was putting up its new plant at Trenton, Michigan, and had a contract with Mesta, one of the original defendants, under which Mesta agreed to install certain equipment, including the roll-grinder in question. Mesta subcontracted the work of installing the grinder to Foster, the other original defendant. The accident occurred while Foster's men were lifting the grinder in order to permit leveling of the base on which it had been placed. Two steel cables by which the grinder was being lifted broke, dropping it and breaking it to pieces.

McLouth sued Mesta and Foster, the former on two causes of action, breach of contract and negligence, and the latter for negligence in letting the grinder fall, and Mesta in its answer cross-claimed over against Foster on a provi-

sion of the subcontract by which Foster agreed to indemnify Mesta against liability arising out of the performance of the work.

Foster then brought in two third-party defendants, Landis and Hartford. Its claim against Landis was based upon the fact that Landis, in pursuance of a provision in its contract of sale with McLouth, had furnished an expert to work with Foster in the erection of the grinder, the allegation being that the expert was in charge and that he, and not Foster, was responsible for the accident. Foster's claim against Hartford was based on a policy of insurance against liability for damage to property, which Hartford had issued to it.

McLouth's insurance carriers, one of them a Pennsylvania corporation, have settled with it and have paid all but $590.78 of its loss, and the defendants make the point that the insurance companies and not McLouth are the real parties in interest. They contend that Rule 17(a), Fed.Rules Civ.Proc., 28 U.S.C., providing that a suit be prosecuted in the name of the real party in interest requires that this complaint be dismissed for want of diversity jurisdiction, inasmuch as Mesta is also a Pennsylvania corporation.

■ Although the record in Yorkshire Ins. Co. v. U. S., 3 Cir., 171 F.2d 374, presented a situation which was the converse of the present case, that decision is directly applicable. In that case the Court of Appeals held that Rule 17(a) was for the benefit of the defendant and that the right to have the real party in interest on the record as plaintiff was a right which might be waived by the defendant. In United States v. Aetna Surety Co., 338 U.S. 366, 70 S. Ct. 207, 216, 94 L.Ed. 171, the Court said that the defendant (the United States) could compel the joinder of the property owner and an insurance company which had paid part of the loss "upon timely motion". In the present case, after two years of procedural maneuvering, the defendants presented their motion four days before the day on which the case was set for trial, after all parties had prepared and witnesses had been brought from considerable distances. It is hard to see how a motion could be less timely.

Inasmuch as the previous ruling of the Court denying the defendant's motion excluded any party having common citizenship with the defendant, the jurisdictional question does not arise.

■ The first fact issue to be decided is whether the accident was caused by negligence and, if so, by whose.

I find, first, that Mesta was not negligent in any respect, second, that Landis' expert was not in control of the rigging operation to the extent that would make Landis liable for the accident and, third, that the accident was caused by Foster's negligence.

The slings used were part of Foster's equipment. The evidence of the plaintiff's experts was convincing to the effect that the slings had been subjected to abuse of some kind, with the result that at the time of the disastrous lift more than half of the total number of strands of steel wire in them had been cut or sheered. This condition could have resulted from several causes, including failure in the course of a number of earlier lifts to properly block the cables where they passed through holes in the machine so as to eliminate the sheering effect of sharp edges, and improper methods in straightening out kinks and bends. It is unnecessary, however, to determine just how the cables came to be weakened because, although on "casual inspection with the grease and dirt that generally accumulates on the wire it is sometimes difficult to see that damage * * * if you looked attentively at it and you knew that the wire had been subject to some severe kinking you should have seen it." Obviously Foster's men did not make an adequate inspection before using the slings for the last lift.

Combined with the use of greatly weakened cables, which could and presumably would have been rejected if

they had been thoroughly inspected, was Foster's failure to select a cable of a size which would have given an adequate safety factor. The safety factor for the lift with the cables actually used was, even on the defendants' contention, very slightly over four and may have been substantially less, in view of the fact that as the machine was rigged the cables were not perpendicular but rose at an angle to the hooks from which they were suspended. I do not say that it was negligence to have a safety factor any less than eight, the figure recommended by the manufacturers of the wire rope, but one of the things which a safety factor is intended to take care of is the contingency that the cable may not be in first-class condition. The fact is that, with a cable which was very far from being in first-class condition, Foster adopted a safety factor which would have been very low for a brand new cable. The evidence is to the effect that five is the minimum for work of this sort.

The testimony of Morganthall, Landis' expert, makes it clear that the rigging operation was not under his control, to any extent which would make Landis responsible for the accident. It is also plain that Bounds, Foster's foreman, did not consider himself subject to Morganthall's orders. The most that can be made of his testimony is that on some occasions, when Morganthall gave what Bounds considered perfectly sound directions or advice, Bounds followed without consulting his superior, thus short-cutting the normal procedure, which was to get his orders generally from Foster's superintendent.

As has been stated, there was no proof of any negligence on the part of Mesta contributing to the accident. Mesta is, however, liable to the plaintiff for breach of its contract to install the equipment. That contract provides "We propose to furnish * * * the installation of Mechanical Equipment * * * as specified herein * * * The foregoing specifications cover the scope of the work to be performed under this contract and include labor, field engineering and construction equipment only for proper installation of the mechanical * * * equipment." Mesta thus unqualifiedly promised that the mechanical equipment, which includes the roll-grinder, would be installed in a proper manner. The promise was broken by failure to install the machine properly and Mesta is liable for damages caused by such failure. The fact that the negligence was that of its subcontractor does not affect its liability for the breach of its primary obligation to do the work. The decisions cited by Mesta to the effect that one who selects and employs a competent independent contractor is not liable for the negligent acts of the independent contractor's employees apply to cases where tort injuries to third persons are involved. Where the injured party is the one with whom the contract was made and the injury is a breach of the contract, they have no application. Mesta's argument on this point would be valid if the contract read merely "Mesta will employ a competent subcontractor to do the work of installing the equipment", but Mesta agreed that it would do the work and that it would be done properly.

The policy which Hartford issued to Foster obligated the insurance company "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." Then, by an exclusion clause, it provides that it shall not apply "to injury to or destruction of (1) property owned, occupied or used by or rented to the Insured, or (2) except with respect to liability assumed under sidetrack agreements and the use of elevators or escalators, property in the care, custody or control of the Insured, or (3) any goods or products manufactured, sold, handled or distributed or premises alienated by the named Insured, or work completed by or for the named Insured, out of which the accident arises." The only question is

whether the exclusion applies to the accident in the present case or, more specifically, what the parties meant when they said "care, custody or control of the Insured".

■■ The policy was countersigned in Illinois and the Illinois law governs. See Ruhlin v. New York Life Ins. Co., 3 Cir., 106 F.2d 921; Hardiman v. Fire Association of Philadelphia, 212 Pa. 383, 61 A. 990. In Welborn v. Illinois Nat. Cas. Co., 347 Ill.App. 65, 106 N.E.2d 142, 143, the Appellate Court of Illinois had before it a policy similar to, although not exactly the same as, the one now before the Court. The Court held that an exclusion of liability for damage to property "in charge of" the insured did not apply to the case of a car left with the insured and undergoing repairs on the insured's premises. The Court agreed that the automobile was "in charge of the insured in some sense of the words", but held that the exclusion, together with a number of others, should be treated "so that they apply to property owned by insured, or which have a status which is logically treated the same as ownership for the purposes of the policy." One of the exclusions in Hartford's policy applies to property owned, rented or used by the insured and, under the reasoning of the Illinois decision cited, it must be held that the additional exclusion of the property in the care, custody or control of the insured is intended broadly to extend the former exclusion to all kinds of temporary possession of property by the insured having something akin to ownership. Thus, it would apply to property used by the insured in his business under any and every kind of arrangement, regardless of the various shades of interest, running from full ownership to the barest custody. Foster used not only its own equipment but also, from time to time, equipment borrowed from others, e. g., the crane in the present case.

The Court in the Welborn case said "This reasoning is not limited to a car. It is equally applicable to a machine or other piece of equipment used in the insured's business. If such item is damaged by accident or negligence, it is excluded under the quoted clause, whether insured owns it, or has rented or borrowed it, or is transporting it."

■ In the present case it must be admitted that, just before the cables broke, the grinder as it hung, suspended from the crane operated by Foster's employee and attended by Foster's workmen, was physically in Foster's "control". Foster was at that moment able to swing it right or left or to lift it or set it down. As a matter of fact, it was not nearly so much in Foster's control as was the automobile in charge of the repairman in the Welborn case. In that case the owner brought the car to the insured's garage and went away, leaving it there to be repaired. In the present case the grinder, from the time it arrived, had been at McLouth's plant, in McLouth's building and under McLouth's general plant protection. On several occasions Foster had moved it from one place to another in the plant, always at the direction of either McLouth or McLouth's general contractor. Foster was merely installing the machine, that is, doing work upon it. Its position was actually closer to that of a repairman who comes into a private house to repair, say a refrigerator, than that of a garage owner having a car left with him for repairs, to be called for by the owner.

In considering the situation of the parties as bearing upon their intention, it may also be noted that Foster was a contractor specializing in the erection of industrial equipment and unquestionably the handling, moving and lifting of large, heavy, expensive pieces of machinery formed a major part of the work which it did. Its risk for liability for damage to property other than that which it was installing would be small compared to that of damaging machinery which it was engaged in handling and lifting. All the circumstances strongly indicate, at the very least, that that was the kind of insurance Foster would want.

I am of the opinion that the policy covers Foster's liability in this case not only because that is the law of Illinois but because it represents a proper construction, in accordance with the intent of the contract.

The foregoing opinion contains findings upon all essential fact issues and it is, therefore, unnecessary to deal with the requests except in a very general way.

It is not contended that Foster did not use the customary and proper methods and procedures in making the various lifts of the grinder.

As to the weight of the grinder, Foster's superintendent, in determining what cable should be used when the grinder was first unloaded, estimated it at between 40 and 45 tons. If 45 tons is the correct figure, then the safety factor, without making any allowance for the angle of the cable, would be only 3.7.

In view of the undeniable fact that the strength of the cables used was seriously impaired by a large number of sheered wires, a condition discoverable upon a thorough inspection, it is not necessary to decide whether Morganthall was mistaken in his testimony that Foster employees hammered out some kinks or whether the slings were the same ones that had been used in earlier lifts.

Most of the other facts not specifically dealt with in the opinion, such as the dimensions of the grinder, the efforts to install it and the various prior lifts which Foster had made are not in dispute, nor are they material.

The conclusions of law, in addition to those contained in the opinion, which follow from the facts, are as follows:

1. McLouth is entitled to judgment against Mesta in the amount of $57,430.-62, plus interest from May 23, 1950, upon its cause of action for breach of contract.

2. McLouth is entitled to judgment against Foster in the same amount for damage caused by Foster's negligence.

3. Foster is liable to Mesta for any judgment entered against the latter in these proceedings.

4. Landis is entitled to judgment in the third-party action against it by Foster.

5. Foster is entitled to judgment in its third-party action against Hartford.

Judgment accordingly.