McLOUTH STEEL CORP.

v.

MESTA MACHINE CO.

FOSTER et al.

v.

HARTFORD ACCIDENT & INDEMNITY CO. (LANDIS TOOL CO., Third-Party Defendant).

No. 11232.

United States Court of Appeals Third Circuit.

Argued March 1, 1954.

Decided June 23, 1954.

McLaughlin, Circuit Judge, dissented.

Thomas E. Comber, Jr., Philadelphia, Pa. (Francis E. Shields, Philadelphia, Pa., Pepper, Bodine, Stokes & Hamilton, Philadelphia, Pa., on the brief), for appellant.

Earl G. Harrison, Philadelphia, Pa. (Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Edgar A. Jonas and Frederick C. Jonas, Chicago, Ill., Bancroft D. Haviland, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Mesta Machine Company, a Pennsylvania corporation, contracted to install a large roll grinder in the Michigan plant of McLouth Steel Corporation, a Michigan corporation. Mesta subcontracted the work of installation to J. M. Foster & Co., an Indiana partnership. While Foster's employees were installing the machine it fell and was severely damaged. McLouth sued Mesta. Mesta cross-claimed over against Foster on Foster's undertaking to save Mesta from liability arising out of the work. Foster joined two third-party defendants, Landis Tool Co., the original vendor of the machine, and Hartford Accident and Indemnity Co., Foster's insurer, who is the present appellant.

The district court, 116 F.Supp. 689, imposed liability upon Foster and its insurer, finding (1) that Mesta was not negligent in any respect, (2) that Landis, whose expert was present when the accident occurred, was not in such control as would render it liable therefor, (3) that the accident was attributable to the negligence of Foster.

The policy of insurance issued to Foster by Hartford bound the insurer "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." However, the policy listed several exclusions from coverage among which was " * * * property owned, occupied or used by * * * [or] in the care, custody or control of the Insured." The sole question here is whether that exclusion is applicable to the circumstances of this mishap.

Federal jurisdiction in this case is based solely upon diversity of citizenship. Hence, Pennsylvania choice of law rules control this adjudication in a United States court for a Pennsylvania district. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

The law of Pennsylvania is clear that where a policy of insurance requires countersigning by an out-of-state agent before the contract is complete, particular provisions are to be given effect according to the law of the place where the document is countersigned. Hardiman v. Fire Ass'n of Philadelphia, 1905, 212 Pa. 383, 61 A. 990; Wootton Hotel Corp. v. Northern Assur. Co., 3 Cir., 1946, 155 F.2d 988; cf. Ruhlin v. New York Life Ins. Co., 3 Cir., 1939, 106 F.2d 921. This is but a specific application of the accepted general rule that the nature and extent of the duty and obligation imposed by a contractual undertaking are determined by the law of the place of contracting. Marcus v. Heralds of Liberty, 1913, 241 Pa. 249, 88 A. 678; Long v. Morris, 3 Cir., 1942, 128 F.2d 653, 141 A.L.R. 1041; Sheinman & Sons, Inc., v. Scranton Life Insurance Co., 3 Cir., 1942, 125 F.2d 442; see, Restatement of Conflicts, §§ 332(f), 346; 1 Couch on Insurance, §§ 194, 198.

The policy in the present case was by its terms not binding until countersigned by an authorized agent. This was done in Chicago, Illinois. Therefore, we look to the law of Illinois for the solution of our problem.

■ The district court relied, correctly we think, upon Welborn v. Illinois Nat. Cas. Co., 1952, 347 Ill. App. 65, 106 N.E.2d 142, 143, as expository of present law in that state. That case involved an insurance policy issued to a garage owner covering bodily injury or property damage suffered through operation of the garage. The policy excluded property, "owned by, rented to, in charge of, or transported by the insured." The Appellate Court of Illinois for the Fourth District affirmed a recovery on the policy for a loss suffered through destruction of an automobile left with the insured for repair. The question was whether the insured was "in charge of" the car. The court conceded that the insured was in a sense in charge of the property, but held that he was not "in charge" of it within the meaning of the exclusionary provision of the policy. It reasoned that the exclusionary provisions were limited to a proprietary type of control, though temporary, and did not cover the possessory handling which is incidental to repair. Almost anticipating the circumstances of the present case the court stated that its reasoning was "not limited to a car", but was "equally applicable to a machine or other piece of equipment". We think the Illinois court would have reasoned the same way and would have reached the same conclusion had the present contract and circumstances been before it.

■ The appellant has attempted to minimize the Welborn case as a decision of a court of intermediate appeal, arguing that such a decision is of very limited authority in Illinois. But the decision is not on that account any less binding on a federal court charged with applying Illinois law. Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Six Companies of California v. Joint Highway District, 1940, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114; West v. American T. & T. Co., 1940, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139. The cited cases make it clear that, where state law governs, a federal court may not decline to accept the rule announced in a state decision merely because it has not received the express or implied approval of the highest court of the state. This is so even though the federal court may think it likely that the highest state court will overrule the intermediate decision as unsound at some later date, or that another intermediate appellate court will reach a contrary result. It is also immaterial that the federal court may think the rule wrong, or prefer another. "An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question." Fidelity Union Trust Co. v. Field, supra [311 U.S. 169, 61 S.Ct. 178]. Compare Turner v. Alton Banking & Trust Co., 8 Cir., 1950, 181 F.2d 899, holding a decision of the Appellate Court of Illinois declarative of state law.

In the present case, though a rational argument can be made for a different result,[1] we recognize our obligation to follow and apply the law of Illinois as declared in the Welborn case.

The judgment will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

No time need be spent in endeavoring to prove or disprove that the Welborn decision is to be accepted as the law of Illinois. Assuming that it is the case has no application here. The policy in Welborn was for garage liability. It specifically included in its coverage the use of the designated premises "for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental

1. See Hardware Mutual Casualty Co. v. Mason-Moore Tracy, Inc., 2 Cir., 1952, 194 F.2d 173.

thereto, including repairs of automobiles or their parts * * *." [347 Ill.App. 65, 106 N.E.2d 143.] A later exclusion clause stated that the coverage did not extend "to property owned by, rented to, in charge of, or transported by the insured." In that matter while a gas tank was being removed from a customer's car by a garage employee the gas ignited causing damage to the automobile. The garage was held responsible for the damage and claimed that the occurrence was within its above policy. The court upheld that contention on the theory that, as it stated, "The precise wording of the general exclusion provision appears to be in direct conflict with the specifically defined operations which are declared covered."

That is not the situation before us. The policy at issue is one for a contractor's liability. It generally covered "all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." It went on to state its particular exceptions to that general coverage and specifically excluded "property in the care, custody or control of the Insured."

The Welborn principle that explicit coverage cannot be avoided by later general exclusion does not solve our problem. What we have is a policy that starts off with a general statement of coverage and then follows with certain carefully stated exceptions. There is no ambiguity about the document in whole or in part. The Illinois law on that sort of policy language is in accord with the firmly settled doctrine that it must be construed as it plainly reads.[1] Nor can the Welborn court's interpretation of the phrase "in charge of" be taken from the restrictive pattern presented by the facts there to control the utterly different circumstances of the issue before us where instead of a risk being specially assumed it is specially excluded.

There is nothing mysterious about the policy in suit. The insured received what it paid for. It it had desired further protection it could have readily obtained that for a further commensurate premium. The policy is the insured's contract, clear on its face. The coverage now sought was distinctly eliminated from the agreement the insured purchased because that kind of insurance was not included for the premium paid. That is the plain intent of the policy as gathered from its four corners. This action is based solely on that complete unambiguous contract. It offers no excuse for going off the agreement; certainly not for speculation as to what kind of insurance Foster would want. The only other reason for the decision of the district court, now affirmed, was its reliance upon the Welborn opinion giving an ownership status to the phrase "in charge of". As already indicated, I think it sound law that Welborn does not control this litigation and it is not only sound but salutary that the above connotation Welborn attempts to attribute to the "in charge of" phrase be confined to the Welborn type of insurance contract. The language of the suit policy "in the care, custody or control of the insured" instead of being so misinterpreted "requires only that the insured be in 'control' of the property actually injured * * *." Judge Augustus Hand, Hardware Mutual Casualty Co. v. Mason-Moore-Tracy, Inc., 2 Cir., 1952, 194 F. 2d 173, 174.

It was a forty-five ton grinder which was being moved not by its owner but by Foster, the expert called in for the purpose. The district judge concedes that Foster had physical possession of the grinder at the time of the accident. He had been hired to install it for the

1. Zitnik v. Burick, 1946, 395 Ill. 182, 69 N.E.2d 888; Dempsey v. National Life & Accident Ins. Co., 1949, 404 Ill. 423, 88 N.E.2d 874; Lentin v. Continental Assurance Co., 1952, 412 Ill. 158, 105 N.E.2d 735.

reason that he was skilled in that kind of task. But because he did not own the grinder the district court, upheld by the majority opinion, says that he did not control it. That is contrary to the fact, contrary to the ordinary definition of control quoted by appellee [2] and contrary to settled decisional law. The Hardware Mutual case above mentioned on its facts is very similar to the present issue; it should be persuasive. And see Speirs & Co. v. Underwriters at Lloyds, 1948, 84 Cal.App.2d 603, 191 P.2d 124; Guidici v. Pacific Automobile Ins. Co., 1947, 79 Cal.App.2d 128, 179 P.2d 337; State Automobile Mutual Ins. Co. v. Connable-Joest, Inc., 1939, 174 Tenn. 377, 125 S.W.2d 490; Root Motor Co. v. Mass. Bonding & Ins. Co., 1932, 187 Minn. 559, 246 N.W. 118; Vaughan v. Home Indemnity Co., 1952, 86 Ga.App. 196, 71 S.E.2d 111.

I think the judgment in favor of Foster and against Hartford should be reversed.

Schnackenberg, Circuit Judge, dissented.

2. "Power or authority to manage, direct, superintend, restrict, regulate, direct, govern, administer or oversee". Black's Law Dictionary, page 428.