**STATE MUT. LIFE ASSUR. CO. v. STAPP et al.**

**SAME v. STAPP (two cases).**

**Nos. 5149–5151.**

Circuit Court of Appeals, Seventh Circuit.

July 12, 1934.

C. L. Hubbard and Franklin P. Searle, both of Rock Island, Ill., for appellant.

Elmore H. Stafford and Edward W. Schoede, both of Rock Island, Ill., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The three appeals here involved were consolidated for hearing. In each case judgment had been given for appellees upon policies of insurance issued by appellant upon the life of John H. E. Stapp. In No. 5149, the action was upon two policies, each for $15,-000, and the others were on policies of $10,-000 and $15,000 respectively. All the policies bear date January 12, 1931, and each contains the following provisions:

"This policy shall not take effect until actually delivered and the first premium paid hereon during the lifetime of the insured."

"Incontestability. Except for non-payment of premium, this policy shall be incontestable after it has been in force for two full years from the date of its issue."

"Suicide. If the insured shall commit suicide within two years from the date hereof, while sane or insane, this policy shall be null and void, except for the amount of the premium paid thereon which amount shall be paid to the beneficiary herein named."

The causes were disposed of on demurrer, the court holding that the defenses interposed were not sufficient in law. Without discussing the pleadings, we proceed to consider the specific issues as they are set forth in appellant's brief, wherein it is said:

"The contested issues are:

"1. Does the incontestability clause of the policy bar the defense set up in the fourth and fifth pleas as amended, namely, intention on the part of the insured, at the time he applied for and took out the policy, to commit suicide at the end of the contestability period, and the later consummation of such fraudulent intent?

"2. Does the date appearing on the face of the policy, or the actual date of coming into effect of the policy, govern the policy provision that it shall be null and void, except as to return of premium, if the insured

shall commit suicide within two years from the date thereof?"

From the pleadings admitted by appellees' demurrers it appears that the insured's death on January 27, 1933, was caused by his suicide;· that the policies in issue were not delivered to the insured, nor were the premiums paid thereon, on January 12, 1931, but that, as to cause No. 5149, the premiums were paid and these policies delivered to the insured on February 10, 1931, and that, as to the other policies, the premiums were paid and the policies delivered on January 28, 1931. It further appears from certain of appellant's pleas that "after the said suicide of said John H. E. Stapp, said insured, and to-wit, on the 5th day of February, 1933, the defendant (appellant) tendered to the plaintiffs (appellees) said sums so paid by said insured as premiums on said policy with in-. terest at the lawful rate from the respective dates of said payments of premiums; that said plaintiffs declined and refused to accept said sums so tendered to them; and the defendant further says that at all times since the making of the said tender it has been, and still is, ready to pay to the plaintiffs the said sums paid by said insured as premiums on said policy together with interest at the lawful rate from said respective dates of the payments of said premiums, and the defendant now brings the same into court here, ready to be paid to the plaintiffs if they will accept the same. * * *"

■ Respecting the issue of suicide, appellant contends that the policies, by their terms, did not come into force until their delivery and the payment of premiums, and that therefore the two-year period within which suicide of the insured would defeat recovery on the policies did not begin to run until the time when, through payment and delivery, the policies first came into force. Appellees contend that the date of "issue" of the policies must be considered the date which the policies bear and which the company's officers certify to be the date.

It would seem that the suicide clause itself would be determinative of this question. It specifies that suicide of the insured shall avoid the policy only if committed "within two years from the date hereof." This provision seems plain and unambiguous.

Notwithstanding the clause respecting the taking effect of the policies on payment of premium and actual delivery, the instruments by their very terms indicate that, for purposes other than maturity of obligations thereunder to the insured and his beneficiaries, the liability of the insured to the insurer is reckoned as from the date which the policies bear. The policy date is that from which the insurer is compensated for assuming the risk, notwithstanding it assumes no liability until subsequently premium payment and delivery. occur. The annual premium paying date is the anniversary of the date of the policies. For the intervening time between date and delivery, during which the insured is paying for protection which he does not receive, we believe that the insurer, while exonerated from any liability otherwise accruing in that interval, may not disregard the policy date when fixing the period for giving full effect to the suicide clause.

■ We cannot see how operation of this provision may be restricted or enlarged by the provision which specifies when the policy goes into force. But whatever, if any, uncertainty or ambiguity might be imported into the contracts by reason of any contradiction or inconsistency between the clauses must be resolved in favor of the insured, under the very generally accepted doctrine that ambiguities and uncertainties in such instruments must be resolved against the insurer. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 91, 68 L. Ed. 235, 31 A. L. R. 102.

The question of when the two-year period begins to run where the insured died more than two years after the date borne by the policy and less than two years after it went into force by delivery and the payment of premium, was definitely passed upon by the Supreme Court in the Hurni Case, supra. The court said, inter alia:

"While the question, it must be conceded, is not certainly free from reasonable doubt, yet, having in mind the rule first above stated, that in such case the doubt must be resolved in the way most favorable to the insured, we conclude that the words refer not to the time of actual execution of the policy or the time of its delivery but to the date of issue as specified in the policy itself."

Some other cases to like effect are: Harvey v. Union Central Life Ins. Co., 45 F.(2d) 78 (C. C. A. 4); Great Southern Life Ins. Co. v. Russ, 14 F.(2d) 27, (C. C. A. 8); Monahan v. Fidelity Life Ins. Co., 242 Ill. 488, 90 N. E. 213, 134 Am. St. Rep. 337. In the Monahan Case, where the court was dealing with the incontestability clause, the policy bore date of September 30, 1903, and was not delivered until October 30, 1903, and there was a clause in the policy, in substance, that it should not be effective until delivered.

Insured died October 19, 1905. The court said, at page 492 of 242 Ill., 90 N. E. 213, 214:

"The insured paid the appellant for carrying the said insurance from September 30, 1903, and the policy provided if the policy should remain in continuous force 'two years from the date hereof,'—that is, from September 30, 1903,—it should be incontestable except for nonpayment of premium. We do not see, therefore, why the date from which the two years should commence to run should not be held to be September 30, 1903. If, however, the two clauses found in the policy, —that is, the clause which provided if the policy should remain in force 'two years from the date hereof,' and the clause which provided the policy should not become binding on the company until the first payment should have been made and the policy delivered,— are in conflict with each other and render the time uncertain from which the two years in which the policy might be contested should commence to run, we think the first clause,— that is, that the policy should be incontestable if it remained in continuous force after two years from the date thereof,—should be held to control, as that construction would be favorable to the insured, as the rule is that the language of an insurance policy, when uncertain or ambiguous, is always to be construed in favor of the insured and more strongly against the insurance company. * * * Our conclusion is that the policy became incontestable two years after September 30, 1903, if it continually remained in force from that date for two years."

In view of such authoritative decisions of the question, we deem it unnecessary to give it further consideration, and we conclude that as to each of the policies the suicide of the insured did not occur within two years of the date of the policy, and that there was no error in the court's sustaining demurrers to pleas which set up in defense suicide within two years.

Appellant further contends that its pleas to the effect that the insured procured these policies with the definite plan and purpose of committing suicide after the specified incontestability period, established a fraud upon the insurer which rendered the policies void ab initio and cancellable upon the insurer's tendering back at any time the premiums paid, which was here done after death of insured. Appellees' response is that the policies make but three exceptions to the application of the incontestability clause, and that fraud is not one of them.

As to the time of the commencement of the two-year limit on contestability, what we have said of that subject respecting suicide is likewise applicable to this contention. The wording of the incontestability clause is not exactly like the other, but substantially so. It is "after it has been in force for two full years from the date of its issue."

This was the precise question in Mutual Life Ins. Co. v. Hurni Packing Co., supra. Fraud in procurement of the policy was there asserted by the insurer after the death of the insured, which occurred more than two years after the date of the policy but less than two years from the time the policy had been delivered to him and the first premium paid. As has been pointed out, the court held that as to such provisions the date upon the policy is the effective date from which the limitation on making such defense must be computed.

We are not greatly impressed with appellant's contention that, since suicide is contrary to public policy, an insurance policy, if procured with the intent of the insured to commit suicide, is fraudulent and void from the beginning, and will not be enforced, and may be voided whenever the facts become known to the insurer and the premiums paid are tendered back, even after the two-year incontestability period. We do not perceive why such a fraud is any more potent in avoiding a policy than a fraud of any other nature perpetrated by the insured on the insurer to procure the policy, nor why it is any more definitely contrary to public policy than other frauds.

Ritter v. Mutual Life Ins. Co., 169 U. S. 139, 18 S. Ct. 300, 42 L. Ed. 693, is urged upon us as indicating that suicide is against public policy, and therefore procurement of insurance with intent to commit suicide is likewise against public policy, and may be pleaded in defense. In that case there is expression to the effect that a contract which would tend to encourage suicide is against public policy and void, and, where the policy is silent as to suicide, willful self-destruction by the insured is a bar to recovery thereon. No issue was there involved respecting a suicide clause or of incontestability. Later decisions of that court quite neutralize any effect of that case as authority here. In Whitfield v. Ætna Life Ins. Co., 205 U. S. 489, 27 S. Ct. 578, 51 L. Ed. 895, the court, distinguishing Ritter, said that it is the province of the state, by its Legislature, to adopt such a policy as it deems best; and it sustained a Missouri statute prescribing an incontesta-

bility rule applicable to suicide of the insured. Northwestern Mut. Life Ins. Co. v. Johnson, 254 U. S. 96, 41 S. Ct. 47, 65 L. Ed. 155, reiterates the Whitfield holding, stating that the Ritter opinion was thereby qualified.

That the public policy in Illinois is definitely contrary to the asserted Ritter doctrine in this regard is indicated by its statutory requirement of the incontestability clause, making policies incontestable, except for nonpayment of premiums, after two years from their date (Smith-Hurd Rev. St. 1933, c. 73, § 261, Cahill's Ill. Rev. St. 1933, c. 73, § 375), a provision so broad and all-inclusive as to leave no room for interposing as a defense any pleas of fraud after the two-year period has passed. The state's public policy to this effect is further manifested by numerous decisions of its Supreme Court, among them Powell v. Mutual Life Ins. Co., 313 Ill. 161, 144 N. E. 825, 36 A. L. R. 1239; Monahan v. Fidelity Life Ins. Co., 242 Ill. 488, 90 N. E. 213, 134 Am. St. Rep. 337; Flanigan v. Federal Life Ins. Co., 231 Ill. 399, 83 N. E. 178; and Royal Circle v. Achterrath, 204 Ill. 549, 68 N. E. 492, 63 L. R. A. 452, 98 Am. St. Rep. 224.

The Hurni Case suggests yet another ground for holding that the two-year period respecting the incontestability clause is here applicable, even if it were conceded that the period did not begin to run until the date of delivery of the policies and payment of the first premium, which, under the first two policies, was February 10, 1931, and under the second two policies was January 28, 1931. It was there declared that the running of the two years did not stop with the death of insured, but continued in favor of the beneficiaries until such time within the two-year period that the insurer took proper steps to terminate the policy because of the asserted fraud. The court said:

"The provision plainly is that the policy shall be incontestable upon the simple condition that two years shall have elapsed from its date of issue—not that it shall be incontestable after two years if the insured shall live, but incontestable without qualification and in any event."

In support of this proposition the Supreme Court cites the Illinois Monahan Case, supra, and another Illinois case, Ramsey v. Old Colony Life Ins. Co., 297 Ill. 592, 131 N. E. 108. Some subsequent decisions following the holding of the Hurni Case are New York Life Ins. Co. v. Swift, 38 F.(2d) 175 (C. C. A. 5); New York Life Ins. Co. v. McCarthy, 22 F.(2d) 241 (C. C. A. 5); Great Southern Ins. Co. v. Russ, supra; Jefferson Standard Ins. Co. v. McIntyre, 294 F. 886 (C. C. A. 5).

The record in the case at bar discloses that appellant at no time did anything to terminate the policies for the alleged fraud within the two years from the dates when appellant claims the incontestability period began to run. Certain of its pleas allege that on the 5th day of February, 1933, it tendered back to the beneficiaries the premiums which had been paid on the policies. This does not amount to an assertion by appellant of the invalidity of the policies or of its election to void them nor the manifestation of any contention by the insurer that the issuance of the policies was induced by fraud and that they are void. New York Life Ins. Co. v. Hurt, 35 F.(2d) 92, 95 (C. C. A. 8); Rose v. Mutual Life Ins. Co., 19 F.(2d) 280, 282 (C. C. A. 6); Jefferson Standard Ins. Co. v. McIntyre, supra; Northwestern Mutual Life Ins. Co. v. Pickering, 293 F. 496 (C. C. A. 5). The first time this was manifested was through the filing of certain of its pleas in July, 1933. Therein, so far as the record discloses, was the first manifestation of its undertaking to void these policies by reason of the alleged fraud. As to all the policies, this occurred more than two years after the incontestability period—as appellant claims it to have been—commenced to run, which, under the incontestability clause, was too late for appellant to assert the fraud in bar of its liability on the policies.

Appellant cites an Illinois case which holds that the incontestability clause was not applicable in a case where the beneficiary had no insurable interest in the life of the insured. Charbonnier v. Chicago Nat. Life Ins. Co., 266 Ill. App. 412. But that case has no bearing here. The court there reasoned that such a policy, being a wagering contract, is void from its inception, and that it cannot be rendered valid by a clause making it incontestable after the lapse of a specified time. Illinois courts have held that fraud in the procurement of policies may not be pleaded as against the incontestability clause. Powell v. Mutual Life Ins. Co., 313 Ill. 165, 144 N. E. 825, 36 A. L. R. 1239; Ramsey v. Old Colony Ins. Co., 297 Ill. 595, 131 N. E. 108. Also that the incontestability clause applies even where the beneficiary, more than two years after the policy was issued, murdered the insured. Wall v. Pfanschmidt, 265 Ill. 180, 106 N. E. 785, L. R. A. 1915C, 328, Ann. Cas. 1916A, 674. We find no decisions in

Illinois tending to support appellant's contention that the incontestability clause of Illinois life insurance contracts such as are those here in issue would not apply in case of a fraud such as is alleged in appellant's pleas.

In any view, we believe appellant should not be permitted by construction to evade a liability which the definite terms of its contracts imposed.

We are satisfied that the District Court did not err in entering the judgments here assailed, and the judgments are accordingly affirmed.