## Potts *v.* Metropolitan Life Insurance Company, Appellant.

Argued October 21, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Owen B. Rhoads,* with him *John Bishop, Dechert,
Smith & Clark* and *Harry Cole Bates,* for appellant.

*Hubert J. Horan, Jr.,* with him *T. F. Deady,* for
appellee.

OPINION BY STADTFELD, J., December 16, 1938:

This is an action in assumpsit by plaintiff, Kathryn
Potts, against the Metropolitan Life Insurance Com-
pany, to recover the face amount of a written contract
of insurance allegedly entered into between defendant
and Carl Findanscutz.

The pleadings consist of plaintiff's statement of claim
and defendant's affidavit of defense.

On Tuesday, April 5, 1938, the case came up for trial before GLASS, J., without a jury. The court found for the plaintiff in the amount of $429.27 and the defendant thereupon filed motions for new trial and for judgment n. o. v., which were dismissed. This appeal followed.

The material facts are not in dispute and are as follows: On December 26, 1936, Carl Findanscutz signed an application for insurance in the defendant company in the amount of $400. At the time of signing the application, Carl Findanscutz paid to defendant's agent, Forman, the sum of fifty cents which represented one week's premium on the policy if it was issued, otherwise, the fifty cent deposit was to be returned to the applicant. At the same time, this agent gave to Carl Findanscutz a receipt for the premium, which provided that no obligation was incurred by the company by reason of such application.

The application was received by the company and in due course the policy was prepared for delivery to Carl Findanscutz. The insurance was of the type which is commonly known as "Whole Life Industrial" and was payable to Catherine Patts, who is the same person as the plaintiff, Kathryn Potts.

The policy provided on the first page under "Effective Date"—"This Policy shall take effect on the date of issue stated in the Schedule, provided the Insured is then alive." On page 4 thereof, under the heading "Schedule" the date of issue was set forth as January 18, 1937. The policy also contained on page 1 thereof the following provision: "This Policy includes all matter printed or written by the Company on this and the following pages and constitutes the entire agreement. Its terms cannot be waived by any agent and cannot be changed except by endorsement hereon signed by the Secretary."

This policy was delivered by the agent, Forman, to Kathryn Potts at her house on Saturday, January 16th.

On Sunday, January 17, 1937, Carl Findanscutz, the insured named in the policy, died, and on Monday, January 18th, Mr. Forman took back the policy that he had delivered Saturday and also the premium receipt book.

Plaintiff, through herself, her daughter, and a Mrs. Wollick, showed that a policy had been delivered on Saturday, January 16th, and that said policy was a policy of the Metropolitan Life Insurance Company, in the amount of $400 and was payable to herself as beneficiary. Plaintiff further testified that the insured, Carl Findanscutz, died on Sunday, January 17th.

Defendant, through its agent, Forman, identified the policy offered in evidence as being the one that had been delivered to Mrs. Potts on Saturday, January 16th, and that it was the policy which had been returned to him on Monday, January 18th. Defendant offered in evidence this policy, the premium receipt book and the type of receipt which was given to Carl Findanscutz on December 26th.

Appellant contends that the policy, identified and offered in evidence, shows the date of issue set forth therein was January 18, 1937, which, by its terms, was to be the effective date, and that prior to that date Carl Findanscutz had died, and therefore the policy never became effective.

Appellee contends that the policy had been delivered on Saturday, January 16th, and, therefore, that was the effective date of the policy.

At the trial of the case, plaintiff objected to the admission of the policy in evidence, on the ground that defendant in its affidavit of defense denied "that it ever issued or delivered a contract of insurance on the life of Carl Findanscutz" and that the offer of the policy was inconsistent with its defense. The trial judge, however, admitted the policy in evidence and disposed of the case as though the defense had been properly pleaded. As stated in the opinion of the court below, the sole question involved is whether Carl Findanscutz

was insured when he died or "putting the question in a different form ...... Had the contract of insurance between the insured and the defendant been consummated, and was it in effect at the time the insured died?" We will consider and dispose of the case in the same manner.

During the trial of the case, the trial judge indicated that he was of the opinion that "an insurance company has no right to put a date on, to post-date a policy like post-dating a check." The opinion of the court below, also, develops at length the meaning of the words "date of issue" and the conclusion of the writer was: "the date of issue, as we have already indicated, is the date when the policy was either signed by the authorized officers of the company or signed by them and delivered to the beneficiary," and accordingly, held this policy to have become effective Saturday, January 16, 1937, the date the policy was delivered. With these conclusions we cannot agree.

Quoting from Couch's Encyclopedia on Insurance Law, at par. 1328, p. 4793, it is stated that "...... a policy may by agreement be antedated and take effect from that date, or the parties may expressly contract that when certain acts have been performed the policy shall become effective as of a certain stipulated date, or a future date on which a policy is to become effective may be fixed, ......"

The contract in suit provides on the face thereof: "In Witness Whereof, the Metropolitan Life Insurance Company has caused this policy to be executed on the date of issue stated in the schedule." By the very wording of the above clause, it is clearly indicated that the Company contemplated that the policy would be and actually was executed on a different date than its effective date; the effective date being referred to as the date of issue stated in the schedule and not the date of actual execution or delivery.

In *Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U.

S. 167, 68 L. Ed. 235 (1923), recovery depended on the meaning of the words "date of issue." Suit was brought on a policy applied for September 2d, dated August 23d, actually executed September 7th and delivered about September 13th. The court, after discussing the meaning of the word "date" then went on to determine the date of issue, and on that point said, at p. 175: "Here the words, referring to the written policy, are 'from its date of issue.' While the question, it must be conceded, is not certainly free from reasonable doubt, yet, having in mind the rule first above stated, that in such case the doubt must be resolved in the way most favorable to the insured, we conclude that the words refer not to the time of actual execution of the policy or the time of its delivery but to the date of issue as specified in the policy itself. *Wood v. American Yeomen,* 148 Iowa, 400; 403, 404; *Anderson v. Mutual Life Insurance Co.,* 164 Cal. 712; *Harrington v. Mutual Life Insurance Co.,* 21 N. D. 447; *Yesler v. Seattle,* 1 Wash. 308, 322, 323. It was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue; and this, in our opinion, is what they did. Plainly their agreement was effective to govern the amount of the premiums and the time of their future payment, reducing the former and shortening the latter, and, in the absence of words evincing a contrary intent, we are unable to avoid the conclusion that it was likewise effective in respect of other provisions of the policy, including the one here in question. This conclusion is fortified by a consideration of the precise words employed, which are 'from *its* (that is, the policy's) date of issue;' or, in other words, from the date of issue as specified in the policy."

Date of issue as defined above is not necessarily then the date of actual execution or the delivery date, but is the date set forth in the policy itself.

The Hurni case has been consistently followed in the Federal Courts and the following are several of the

more recent citations: *Horwitz v. N. Y. Life Ins. Co.,* 80 Fed. (2d) 295, 299 (1935); *N. Y. Life Ins. Co. v. Tolbert,* 55 Fed. (2d) 10, 13 (1932); *Shira v. N. Y. Life Ins. Co.,* 15 F. Supp. 259, 260 (1936).

The state courts have also cited it with approval, the Iowa Supreme Court in *Schmith v. Union Mut. Casualty Co.* 216 Iowa 936, 247 N. W. 655 (1933) holding, at p. 944: "The date of issue of a policy refers to the date the policy bears and not to the time of the actual execution or delivery of the policy."

The question involved in the instant case has not, so far as our research discloses, been decided by the appellate courts of Pennsylvania. However, a similar factual situation gave rise to a case decided by the Common Pleas Court of Montgomery County. That case was *Catherine Gorak v. John Hancock Mutual Life Ins. Co.,* 48 Montgomery County Law Reporter 149, opinion by Corson, J.

Application for the policies in that case was made on September 8, 1930, by Tony Gorak. The policies as prepared provided "the policy shall not be binding upon the Company unless upon its date I shall be alive and in sound health and the premium duly paid." The policies were delivered on the 20th of September, bearing date September 24th. Admittedly, Tony Gorak was in good health on the 20th at date of delivery, but he was not on the 24th, and he died several days later. The court, in affirming judgment for defendant, said, at p. 151: "There is authority for the argument that the mere dating of an insurance policy does not necessarily make that date the effective date of the policy and that the post dating of a policy in violation of an agreement will not defeat a liability accruing in the meantime under certain conditions, etc. See Couch's Ency. of Ins. Law, Vol. 1, page 186, sec. 100; *Jackson v. Bard,* 4 Johns. N. Y. 230; *Lorent v. South Carolina Ins. Co.,* 10 S. C. L. 505.

"An insurance policy, however, is a contract between

the parties, and is to be interpreted by the same rules governing any other contract, and must give effect to the mutual intention of the parties as it existed at the time of contracting, so far as such intention is ascertainable. *McCaffrey v. Knights of Columbia,* 213 Pa. 612.

"The intention of the parties in the present case can only be ascertained from the written instruments. From the application signed by the insured and the policy issued by the Company, the only intention of the parties that can be found is that the policy was not to become effective until September 24, 1930, and only then in the event that the insured was alive and in good health on that date. The insured died before that date, and the policies never went into effect, and no liability thereunder ever attached to the defendant.

"The acceptance of the premium can have no significance since the application provides that payment of the premium may be made with the application if the insured so desires, but even then the receipt provides that no liability shall attach until, first, the date of the policy, second, the delivery of the policy, and, third, that at that time the insured shall be alive and in sound health.

\* \* \* \* \* \* \*

"There is no evidence of any kind to show that there was any agreement between the parties, or any intention upon the part of either, to depart from their written agreements. To have a contract, we must have a meeting of the minds of the parties. There is written evidence that the intention of the company was to have the policies take effect on September 24, 1930. If we assume the signing of the application by the insured, we have written evidence that he also intended the policy to take effect upon its date."

In *National Life & Accident Ins. Co. v. Sikes,* 7 S. W. (2d) 154 (Court of Civil Appeals of Texas), a policy dated July 20 was delivered July 18, and con-

tained a clause providing no obligation was assumed by the company unless on said date (date set forth in policy) insured was alive and in sound health. Insured was in good health on the 18th but not on the 20th. The court, in rendering judgment for the defendant company, said at p. 155: "The policy provides, in effect that it shall be void if the insured is not in sound health on the date the policy becomes effective. As previously stated, the proof shows that the insured was not in sound health on the date the policy by its terms became effective. It is true he was in good health on the date it was delivered; but by its express terms the policy did not take effect until the 20th. The insurer had a right to contract for liability upon a policy of that kind. Its plain provisions cannot be evaded upon the ground that the policy was not read by the insured or his agent at the time it was delivered." To like effect see *American Nat'l Ins. Co. v. Hammett,* 26 Ala. App. 552, 163 So. 461 (1935); also *Metropolitan Life Ins. Co. v. Honore Bruneau,* 64 Les Rapports Judiciares de Quebec (Cour du Banc du Roi) 551 (1938), a case arising in the Court of King's Bench, Canada.

The only evidence of the intention of the parties in this case is contained in the policy itself. There is no evidence to show that the intention of the parties was other than that the effective date of this policy was to be January 18. The fact of delivery standing alone and unexplained is not evidence of the intention of the parties. The contract speaks for itself, stands uncontradicted, and is in no sense ambiguous.

Further evidence of the fact that the parties intended the policy to become effective on the 18th of January can be found from an examination of the premium receipt book and the terms of the policy governing the payment of premiums. In this respect the policy provides: "The consideration for this Policy is the payment of the premium stated in the schedule on or before the date of issue, and of a like weekly premium on each

succeeding Monday until the anniversary of the date of issue of the policy next after the insured has attained the age of 74 years, or until the prior death of the insured. If any premium is not paid when due, this policy shall lapse, subject to the provision for Grace Period and to the Nonforfeiture Privileges."

As premiums are payable weekly and on each succeeding Monday, it can be assumed that the first premium would only cover a period of one week prior to the succeeding Monday, which means that the insurance is paid for from Monday to Monday. The initial premium, therefore, would cover the period from Monday, January 18th to Monday, January 25th, provided the policy became effective. To hold that the policy became effective January 16, 1937, would, in effect, make the insurance company liable for a period for which no premium had been paid. The first entry in the premium receipt book was fifty cents under date of January 18th. This was the fifty cents that had been paid to the agent at the time of the signing of the application and which was required by the terms of the policy to be paid on or before the date of issue. This entry is further evidence to sustain the proposition that the parties intended the inception of the risk to be Monday, January 18th.

Companies issuing insurance policies, as in other contracts, have the right to fix in the policy the date of its beginning, and this date, as indicated, may be prior to, at the time of, or subsequent to its delivery.

In the instant case, there was no ambiguity. The obligations under the policy were to begin pursuant to its terms and conditions according to its date, which was plainly set forth in the policy, with no other date being intimated or mentioned.

As the terms of the written contract were clear and unambiguous, the court was not at liberty to interpret them contrary to the plain and apparent meaning of the words used.

In *Urian v. Scranton Life Ins. Co.,* 310 Pa. 144, 165 A. 21, the Supreme Court, in an opinion by Mr. Justice SIMPSON, stated, at p. 150, 151: "Many, if not most of the discrepant decisions arose by giving too great weight to the conclusion reached in other cases which are relied on, without noting the difference in the language of the policies. Others arose by giving undue weight to the rule, to which we adhere, that 'If doubt exists as to the meaning (of the language used in an insurance policy) it should be resolved in favor of the insured rather than in the interest of the insurer:' *Levinton v. Ohio Farmers Ins. Co.,* 267 Pa. 448. In a number of the cases elsewhere, the court created the 'doubt' by a species of argument which would not be tolerated in any other kind of contract, and then, having thus found the 'doubt,' resolved it 'in favor of the insured.' So far as we are concerned, a little further reading of our opinion last referred to, will disclose a rule which is paramount to the clause above quoted: Where 'language is clear and unambiguous (it) cannot be construed to mean otherwise than what it says:' Ibid. 452. We have often said this (*Bole v. New Hampshire Fire Ins. Co.,* 159 Pa. 53; *Hesse v. Traveler's Ins. Co.,* 299 Pa. 125; *Foundation and Construction Co. v. Franklin Trust Co.,* 307 Pa. 10), and trust we shall continue to adhere to it, so long as our judicial system provides for an interpretation of contracts made by the litigants, and not to the making of contracts for them."

As the insured was not alive on the effective date of the policy, the same never took effect, and a recovery thereon cannot be sustained.

The assignments of error are sustained, the judgment is reversed and now entered for the defendant.