Leeta A. LLOYD, Appellant,

v.

The FRANKLIN LIFE INSURANCE COMPANY, a Corporation, Appellee.

No. 15142.

United States Court of Appeals Ninth Circuit.

April 25, 1957.

Neil Cunningham, San Francisco, Cal., C. W. Ricketts, Los Gatos, Cal., for appellant.

McCutchen, Thomas, Matthew, Griffiths & Greene, and Morris M. Doyle, Arthur R. Albrecht, San Francisco, Cal., for appellee.

Before HEALY, LEMMON and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

The beneficiary of a life insurance policy on the life of Warren William Lloyd, which contains in two different places the declaration, "First Policy Year Begins: January 1, 1953," brought action against The Franklin Insurance Company for the proceeds, after the death of Lloyd by suicide on December 21, 1954. The defense was that the effective date of issue of the policy was fixed, in accordance with a special request of Lloyd, at January 1, 1953, and that the policy issued contained a clause that, if "within two years from date of issue the Insured * * * shall die by self-destruction, the liability of the Company shall be restricted to the amount of premiums paid hereon." Cross-motions for summary judgment were filed. Based upon the pleadings, admissions, depositions and affidavits and all other documents on file, the trial court entered summary judgment for the Company.

█ The beneficiary did not object to the submission of the matter to the court on the cross-motions for summary judgment. After judgment was rendered for the Company, however, she made a motion to vacate judgment on the ground that there were material questions of fact unresolved. If this Court on appeal had found that proposition true, the cause must have been reversed, irrespective of the fact that each of the contesting parties respectively filed a motion for summary judgment. The able judge of the trial court, however, found expressly that there remained on the record no "issue as to any material fact." The record so shows. We affirm this holding.

█ It is true, the Company attempted to condition the admission that "a receipt on a form prepared by defendant [Company] was given to the insured" by the statement that this concession was for the purposes of its own motion for summary judgment only. We hold such a condition invalid. A concession of fact on motion for summary judgment establishes the fact for all time between the parties. The party cannot gamble on such a conditional admission and take advantage thereof when judgment has gone against him. This Court will not emasculate thus the efficient devices of summary judgment. Nor will we follow the weary road of common law pleading through tortuous sinuosities whereby facts admitted by a demurrer to any pleading must be established by proof in order to have judgment. This is not to say that there could be no relief by the court from an erroneous admission of a party. But there cannot be a tentative or conditional admission on motion for summary judgment, which by definition posits that there are not in truth any unresolved issues of material fact which must be tried if the wheel turns wrong. Of this all practitioners should take notice. The facts should be established first, and the law can only be laid down in light thereof.

█ The position of the beneficiary is based upon the fact that a receipt was thus given by the Company to the insured on December 6, 1952, when the latter, at the solicitation of the agent of the Company, signed an application for a policy of life insurance on printed form prepared by the Company. This application acknowledged receipt of the promissory note of insured for $12.57, the premium for a full month. The application provided that the policy issued thereon should not take effect unless the policy were delivered and the first premium paid during the lifetime and good health of insured, *"in which event*

*such policy shall be deemed effective as of the beginning of the first policy year as shown on such policy."*

The receipt provided that, "if a policy is *issued* differing in plan or amount or premium or benefits from that applied for," no insurance should be considered in effect "until the first premium is paid and the policy manually delivered to and accepted by the applicant." Here there was a change in that the premiums provided for in the policy as issued were to be paid quarterly beginning on January 1, 1953, instead of monthly as contemplated in the receipt. Lloyd did accept this policy, which was manually delivered to him after January 1, 1953. He then paid the premium for the first three months.

The policy so issued contains elaborate clauses relating to premiums. One of these provides:

"Each semi-annual, quarterly or monthly premium shall be in accordance with the rates in use by the Company at *date of issue* hereof."

In the application, also, under the printed instruction, "Use this space for special requests," there appears the handwritten notation, "Date policy Jan. 1, 1953." In open court, when asked by the trial judge "whether you concede that Lloyd requested the policy be dated January 1, 1953, regardless of who wrote it on the application," counsel for the beneficiary answered, "Yes, Your Honor; we can't avoid that."

The receipt so delivered, which is relied upon by the beneficiary, was in part in the form set out below:

"First. It is agreed that (1) if the entire first premium stipulated in the policy issued hereon is paid to an authorized agent of the Company at the time of making this application and (2) if the Company shall be satisfied after investigation and medical examination, if a medical examination is required, that the proposed insured was, under the Company's rules and standards, an acceptable risk for the amount of insurance (not in excess of the Company's limit of retention) and upon the plan and at the rate of premium applied for on the date hereof or on the date of the medical examination, if a medical examination was required, which ever is the later, the insurance shall be effective *in accordance with the provisions of the policy applied for* from the date of this application or the date of the medical examination, if a medical examination was required, which ever is the later.

"Second. If the entire first premium is not paid or if a policy is issued differing in plan or amount or premium or benefits from that applied for, no insurance shall be considered in effect under this application unless and until the first premium is paid and the policy manually delivered to and accepted by the applicant during the continued lifetime and good health of the proposed insured." (Emphasis supplied.)

Insured took his medical examination on December 11, 1952.

The policy was delivered January 5, 1953. It provided: "First Policy Year Begins: January 1, 1953," as above noted, and established an annual premium of $136.63. One stipulation of the policy, as we have seen, established limited liability *if insured committed suicide* "within two years from date of issue." Death by suicide occurred December 21, 1954. Upon delivery of the policy, the insured and the agent of the Company agreed the premiums be paid quarterly and insured paid the first quarterly payment by check. There is no evidence that the Home Office of the Company ever received the promissory note given December 6, 1952. There was no payment of premium for the month commencing December 6, 1952, or December 11, 1953, or any other premiums except the quarterly premiums dating from January 1, 1953, provided for by

the agreement received by the Home Office or the agent, unless the promissory note constituted one.

The sole question in the case is what was the "date of issue." We hold January 1, 1953, was the "date of issue" of this policy. In the application which was made a part of the policy, insured requested that it be so dated. Although the policy actually was written January 5, 1953, the Company dated it January 1, 1953, in accordance with the request of insured. All of the provisions of the policy relate to the date of January 1, 1953. The date of issue is thus fixed.

The insured, in accordance with these provisions of the policy as to premiums, had paid eight quarterly premiums. According to the agreed date of issue, the policy was effective without lapse until January 1, 1955. But insured killed himself December 21, 1954. Two years from the agreed date of issue had not elapsed, and the Company was only liable for the return of premium paid. It has been held that a policy would not become incontestible until two years from the date of issue established by the request of insured and compliance therewith by an insurance company.[1] Therefore, this policy would not have been incontestible until two years after January 1, 1953. Similarly, the suicide clause would be effective for that time. The beneficiary contends that the policy was rendered ambiguous by the inclu-

sion of the application as a part of the policy and the delivery of the promissory note as payment of the premium for the first month. It is claimed that the coupon receipt attached to the application made coverage commence on the date of the medical examination, December 11, 1952. Then it is urged that dating the policy January 1, 1953, would have the effect of giving the Company premium payment without any consideration or insurance contract obligation on the part of the Company for almost a month. The premium payment by promissory note of December 6, 1952, it is said, applied to short-term coverage for the period December 11, 1952, to the date of delivery of the policy. Finally, beneficiary urges the interim coverage given by the cover note commencing December 11, 1952, and the coverage which the policy says begins January 1, 1953, constituted a single contract and the application and the policy are to be construed together as parts of the same contract.

■ It is the law that doubts, inconsistencies or ambiguities in the construction of an insurance contract must be resolved in favor of the insured and against the insurance company.[2] This rule is applicable to the question of the date of issue.

But we expressly find there was no ambiguity in the insurance contract.[3]

1. Where insured requested the policy be given a certain date and the insurance company acceded and dated the policy according to the request, that date became the "date of issue" and the insurance company was bound thereby. See Mutual Life Insurance Co. of New York v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Horwitz v. New York Life Insurance Co., 9 Cir., 80 F.2d 295.

2. But not where the language is plain and unambiguous. Coit v. Jefferson Standard Life Insurance Company, 28 Cal.2d 1, 168 P.2d 163, 168 A.L.R. 673; Guidici v. Pacific Auto Insurance Co., 79 Cal. App.2d 128, 134, 179 P.2d 337.

3. This Court, in Home Indemnity Co. of New York v. Standard Accident Insur-

ance Co. of Detroit, 9 Cir., 167 F.2d 919, 923, construing the law of California, said: "The ancient rule that all intendments in an insurance policy are to be construed favorably to the insured has one important limitation; namely, that where the language of any given provision of the policy is clear, that language must be followed." Likewise, in Potts v. Metropolitan Life Insurance Co., 133 Pa. Super. 397, 2 A.2d 870, 874, it was said: "Companies issuing insurance policies, as in other contracts, have the right to fix in the policy the date of its beginning, and this date, as indicated, may be prior to, at the time of, or subsequent to its delivery. In the instant case, there was no ambiguity. The obligations under the policy were to begin according to its terms and conditions according to its

There is an attempt to suggest that the Company must have used the words "January 1, 1953, which is the date of issue" and that the words "First Policy Year Begins: January 1, 1953," used to date the policy in accordance with the request of insured, are not sufficient. But every other clause of the policy application and receipt point unmistakably to January 1, 1953, as the date of issue. If the written document be taken altogether, there is no other date which could be the date of issue. The policy is therefore clear and unambiguous. The Company has a right to have the agreement enforced as written.

The application, receipt and the provisions of California statutes are construed as parts of the policy. The instrument itself provides that the application and the advance payment of a premium constitute the consideration for the policy. There was conclusive evidence of the payment of premium, which made the policy binding. The mere fact that there was a binding contract on December 11, 1952, did not prevent the parties from postponing coverage and date of issue until January 1, 1953, by express agreement. Lloyd and the Company did have an express agreement to that effect. The whole policy, including the receipt and the application, is consistent with that agreement. All the following features of the policy date from January 1, 1953 —payment of premiums, grace periods, determination of age, loan value, reserve basis, dividends, extended insurance, paid up insurance, cash surrender value, application for non-forfeiture and loan value tables, mortgage redemption provisions, as well as the incontestible and suicide clauses.

All the cases hold that the clauses of the policy refer not to the time of the actual execution of the policy or the time of its delivery, but to the date of issue specified in the policy itself.[4] This is the day upon which, by agreement of the parties, the risk attached. Here the conduct of the Company and the insured through the time from the application to the suicide of Lloyd was consistent with January 1, 1953, as date of issue. There was no ambiguity.[5]

There are three possibilities as to coverage. First, there was temporary coverage paid for by promissory note from December 11, 1952, to January 1, 1953, and full coverage in accordance with the face of the policy thereafter. Second, beneficiary contends the coverage under the policy began December 11, 1952. Third, according to the explicit written terms of the policy, coverage began on the date of issue, January 1, 1953.

The first possibility is remote. According to the application, the payment was applied to the first monthly premium due on the policy and the first month was to begin January 1, 1953. None of the forms for interim coverage was observed. The promissory note was either returned to insured or destroyed. No payment came into the Company except

date, which was plainly set forth in the policy, with no other date being intimated or mentioned. As the terms of the written contract were clear and unambiguous, the court was not at liberty to interpret them contrary to the plain and apparent meaning of the words used."

4. Cf. State Mutual Life Assurance Co. v. Stapp, 7 Cir., 72 F.2d 142, 143, where the company evidently chose to predate the policy, although liability under it did not attach until delivery, which was made within two years of the suicide of the insured. The insurer was kept to his choice, it being held that the date of the policy governed the clause excluding liability for suicide "within two years from the date hereof," so that it was no longer operative at the death of insured.

5. In New York Life Insurance Co. v. Noonan, 9 Cir., 215 F.2d 905, certiorari denied 348 U.S. 928, 75 S.Ct. 341, 99 L.Ed. 727, the court held that a policy was unambiguous which specified a certain day as "date of issue." Here, although that formalistic phrase was not used, every clause and phrase of the contract, including the receipt, application and the policy dated in accordance with the request of the insured, pointed to January 1, 1953, and no other date was possible.

the one for the first quarter under the express clauses of the policy. The check of insured therefor covered not only the first month, but all three months of the first quarter. It was unquestionably given in lieu of the promissory note for the premium for the first month. But, if there were temporary coverage paid for by the note, the position of benficiary is not strengthened thereby. The coverage was not coverage under the policy, but in addition thereto. If this be true, whether the Company forgave the premium for these days by destroying or returning the note is immaterial, for, even if the Company had received payment for this period, neither the date of issue of the policy nor coverage thereunder would be affected.

The second possibility can hardly be so dignified. If the coverage under the policy itself commenced December 11, 1952, then it was in default on December 11, 1953, because only eight quarterly premiums were paid, according to the record. Upon this hypothesis the default would have been in effect on December 21, 1954, when insured committed suicide. But this contention flies in the face of the plain provisions of the policy which required the premium payments to be made on January 1, 1953, the date of issue, and quarterly thereafter. The construction claimed is impossible. There is no contention that the loss would not be payable under these circumstances, since a thirty-one day grace period was embodied in the policy.

There is no inconsistency as to the third postulate. The express request of insured for a January 1, 1953, dating of the policy was included in the application which became a part of the policy. Since the policy was dated January 1, 1953, the contract between the insured and the Company was correctly expressed in the written document. To deny insured the right to designate the "day of issue" would deprive him of the right to contract freely. The beneficiary contends that insured had no right to leave his family unprotected during the period from December 11, 1952, to January 1, 1953. But this right is accorded to him by the applicable statute, which reads:

The insurer is liable when "the person to be insured dies on or after the date of the application, on or after the date of the medical examination, if any, or on or after any date specially requested in the application for the policy to take effect, whichever is later * * *." California Insurance Code, § 10115.

Thus coverage took effect on January 1, 1953, which was the latest of the days specified. The insured had left his family unprotected in all the time up to December 6, 1952. It would seem he was well advised not to pay the premium for coverage prior to January 1, 1953, because he was alive and well on that day.

As noted above, the policy itself, including the application, can only be read to commence coverage January 1, 1953. The acts of the parties accord with that interpretation only. Eight premiums were paid in accordance with the express terms thereof. The promissory note may indeed have been payment for the premium for the first month. But the first month began by express terms on January 1, 1953. The promissory note was never collected, according to the record. The check was given for the first quarter by insured. The agent gave up the promissory note or destroyed it. Since it was unquestionably payment only for the premium for the first month and the check covered the first three months, the note had served its purpose. If there was temporary coverage between December 6, 1952, and December 31, 1952, the Company donated the coverage to the insured.

The documents are inconsistent with any other theory. The trial judge had testimony as to the actions of the insured and the agent. His finding was not clearly erroneous, but such as this Court would have made on the evidence in the record.

Affirmed.

HEALY, Circuit Judge.

I dissent.

The facts before us are relatively simple. On December 6, 1952, Warren W. Lloyd signed an application for life insurance from appellee insurer on a form provided by the latter. Item 25 on the application form read: "Use this space for special requests." Filled in thereunder was the following: "Date Policy Jan. 1, 1953."

At the time Lloyd executed the application (December 6, 1952) he gave the insurer his note for $12.57 to pay the first month's premium. At the same time the insurer gave Lloyd a receipt for this payment on a form which it had prepared. The following statement appeared on the application form:

"There has been delivered to the agent the sum of $12.57 in * * * notes, on account of the first premium. (See agreements below.)

* * * * * *

"* * * It is hereby agreed: * * * (3) That any policy issued hereon shall not take effect unless and until the policy has been delivered to the undersigned and the first premium paid during the lifetime and good health of the proposed insured *(except as provided in the Receipt bearing the same number and date as this application if the entire first premium has been paid and acknowledged above and such receipt issued)* in which event such policy shall be deemed effective as of the beginning of the first policy year as shown on such policy * * *." [Emphasis supplied.]

The insurer subsequently issued Lloyd its policy No. 1127042. In the policy it was stated that the "first policy year" began January 1, 1953, and that the policy had been "executed" January 5, 1953. The policy contained the following provision:

"Suicide: If within two years from date of issue the Insured (whether sane or insane) shall die by self-destruction, the liability of the Company shall be restricted to the amount of premiums paid hereon."

Sometime in January of 1953 the insurer delivered the policy to Lloyd. At that time Lloyd decided to pay the premiums quarterly instead of monthly, so he gave the insurer $36.04 to cover the period from January 1 to March 31, 1953. The insurer then either returned to Lloyd or destroyed the note for $12.57.

On December 21, 1954, Lloyd committed suicide.

His wife, the beneficiary, brought suit on the policy. The insurer defended on the ground of suicide within the two-year period. Each party moved for summary judgment. The motion of the insurer was granted.

The sole question here is: What was the "date of issue" referred to in the suicide clause? Neither the policy, the application, nor the receipt define this term. The insurer could have removed doubt or uncertainty by specifying in the policy what it meant by the phrase "date of issue." Since it did not do so, the term should be construed most favorably to the beneficiary. Mutual Life Ins. Co. of New York v. Hurni Packing Co., 1923, 263 U.S. 167, 174, 44 S.Ct. 90, 68 L. Ed. 235.

My brothers confuse the term "date of issue" with the effective date of the insurer's liability on the policy. They decide that there was no coverage prior to January 1, 1953, and they accordingly assume that the "date of issue" could not have preceded January 1. However, assuming (without deciding) that there was no liability on the policy prior to that date, I see no reason why, under the unusual circumstances of this case, the "date of issue" to which the suicide clause makes reference cannot fairly be thought to have preceded January 1, 1953. See State Mutual Life Assurance Co. v. Stapp, 7 Cir., 1934, 72 F.2d 142, 144. In that case it was held that though an insurer's liability did not begin until January 28, 1931, a suicide on January

27, 1933 was without the two-year suicide exclusion of policies bearing the date January 12, 1931.

The purpose of the suicide exclusion is to protect the insurer from one procuring insurance with the thought or intention of early suicide. That purpose is substantially achieved here if the exclusion runs from the date of issue of the receipt given the insured by the insurer on December 6, 1952, for the first premium payment. This construction seems to me only fair and reasonable. The insurer is in no position to complain of it since if it intended something different it could easily have used terms that would render its meaning plain. See New York Life Insurance Co. v. Noonan, 9 Cir., 1954, 215 F.2d 905.

I would reverse the judgment.