MARILYN LAUER, Plaintiff-Appellant v. AMERICAN FAMILY LIFE INSURANCE COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—00—0340

Opinion filed April 13, 2001.—Rehearing denied May 17, 2001.

Schoen & Smith, Ltd., of Chicago (Lee J. Schoen, of counsel), for appellant.

Peterson & Ross, of Chicago (Sean Patrick MacCarthy, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Marilyn Lauer, the beneficiary under her husband's life insurance policy, filed a two-count complaint seeking a declaratory judgment that the policy was incontestable at the time of her husband's death (count I) and alleging defendant, American Family Life Insurance Company, breached the contract by failing to pay death benefits under the policy (count II). The circuit court dismissed count I pursuant to section 2—615 of the Code of Civil Procedure (725 ILCS 5/2—615 (West 1998)), explaining that based upon the contract and the law, the two-year contestability period commenced on the policy date rather than the conditional receipt date. Further, the circuit court dismissed count II pursuant to section 2—619 of the Code of Civil Procedure (725 ILCS 5/2—619 (West 1998)), explaining that Albert Lauer had made a material misrepresentation in his insurance application. Plaintiff appeals.

On March 23, 1997, Albert Lauer applied for a life insurance policy with defendant. On March 26, 1997, Albert Lauer paid his first premium and the defendant issued a conditional receipt (the Conditional Receipt). On April 12, 1997, defendant issued the 20-year decreasing term life insurance policy for which Albert Lauer had applied (the Policy). By its terms, the Policy took effect retroactively on April 2, 1997, and terminated April 1, 2017. Albert Lauer died from lung cancer on March 28, 1999.

His beneficiary, Marilyn Lauer, submitted the Policy, along with Albert Lauer's death certificate, to defendant for payment. Defendant

initiated a routine contestable investigation during which it received medical records from, *inter alia*, Dr. Patel, indicating that Albert Lauer had been diagnosed with lung cancer in May of 1996 and had received multiple regimens of chemotherapy during 1996 and 1997. Defendant refused to pay benefits under the Policy because Albert Lauer's death occurred within the two-year contestability period and because Albert Lauer's answers to questions on his application for life insurance about his medical condition were incomplete in that they failed to disclose his diagnosis and treatment for lung cancer. Defendant asserted that, had it known of the condition, it would not have issued the Policy.

On appeal, plaintiff argues that the Policy became incontestable on March 26, 1999, the two-year anniversary of the date upon which Albert Lauer paid his first premium and the defendant issued its Conditional Receipt. Plaintiff relies primarily upon *Holtze v. Equitable Life Assurance Society of the United States*, 548 F.2d 1037 (D.C. Cir. 1976), and upon the public policy expressed by the Illinois legislature in section 224(c) of the Illinois Insurance Code (215 ILCS 5/224(c) (West 1998)), in support of her argument.

In *Holtze*, the decedent completed an application for life insurance on October 24, 1969, paid the first premium, and received a conditional receipt. The insurance company conducted its examinations and issued a formal policy on November 28, 1969, which contained a standard two-year incontestability clause. Holtze died on November 19, 1971. The United States Court of Appeals for the District of Columbia certified two questions to the Maryland Court of Appeals asking it to define whether the definition of "Policy" under Maryland law would call the conditional receipt a "written instrument" as used in the policy definition, and what was the date of issue of the policy. The Maryland court found that the conditional receipt together with the application are part of the "written instrument" in which the contract was set forth on October 24, 1969, and the two-year incontestability period started that day. Applying this ruling, the federal court reasoned that because the insurance company had accepted the first premium, issued, and delivered the formal policy, it was in no position to raise the point that coverage did not exist prior to November 26, 1969. Accordingly, the federal court ruled that under Maryland law, where the conditional receipt was issued on October 24, 1969, and the formal policy was issued on November 23, 1969, the policy became incontestable on October 24, 1971.

■ Section 224(c) of the Illinois Insurance Code provides, in relevant part:

> "A provision that *the policy, together with the application*

therefor, a copy of which shall be endorsed upon or attached to the policy and made a part thereof, *shall constitute the entire contract* between the parties and that after it has been in force during the lifetime of the insured a specified time, *not later than 2 years from its date*, it shall be incontestable except for nonpayment of premiums \*\*\*; provided that the application therefor need not be attached to or made a part of any policy containing a clause making the policy incontestable from the date of issue." (Emphasis added.) 215 ILCS 5/224(c) (West 1998).

Defendant counters that the Policy became incontestable on April 12, 1997, the two-year anniversary of the date upon which defendant issued the Policy. Defendant relies primarily upon *Malone v. North Atlantic Life Insurance Co.*, 256 A.D. 2d 1077, 1078, 682 N.Y.S.2d 760, 761 (1998), and the language of the Conditional Receipt and of the Policy, in support of its argument.

In *Malone*, the plaintiff obtained a life insurance policy with a two-year incontestability provision, and died more than two years after the issuance of the conditional receipt, but less than two years after the issue date of the policy. Upon plaintiff's death, the insurer contested the policy, claiming that the decedent had concealed the fact that he had cancer. The *Malone* court held the two-year incontestability period did not begin to run until the issue of the date of the policy, not on the date the insured received the conditional receipt. The insurance policy was, therefore, contestable. According to the *Malone* court, "[a] conditional receipt is simply a binder that provides for temporary or preliminary insurance, covering the applicant until the insurance company's investigation of insurability is completed." *Malone*, 256 A.D. 2d at 1078, 682 N.Y.S.2d at 761. Accord *Loyda v. New England Life Insurance Co.*, 409 F. Supp. 754 (D. P.R. 1976).

The Policy contains a standard two-year incontestability provision which provides:

"INCONTESTABILITY. We will not contest the validity of this Policy except for nonpayment of Premium after it has been in force during the Primary Insured's lifetime for two years from the later of:

1. the Issue Date; or
2. the date We approve any Reinstatement Application."

The Conditional Receipt provides:

"*INSURANCE UNDER THIS RECEIPT ENDS ON THE EARLIER OF:*

1. 120 days after Today's Date; or
2. the date insurance takes effect under the Policy applied for."

"*INSURANCE UNDER THIS RECEIPT IS SUBJECT TO LIMITATIONS:*

1. The amount of insurance under this Receipt \*\*\* is the lesser of $500,000 or the Amount of Insurance applied for \*\*\*."

The Policy defines "**ISSUE DATE**" as "[t]he date the Policy was issued as shown in the Schedule." The schedule lists the "issue date" as April 12, 1997.

Based upon this language, and employing the reasoning utilized in *Malone*, defendant contends, in essence, that it issued two insurance policies to Albert Lauer. The first of these was the temporary insurance policy represented by the Conditional Receipt. This policy exposed the defendant to significant liability, but for a limited period of time. Coverage under this policy terminated by its terms on the date the 20-year decreasing term life insurance Policy, for which Albert Lauer had applied, took effect. That second policy took effect on April 2, 1997. The incontestability period in the second, 20-year Policy started on its "issue date" and the issue date clearly noted on the Policy is April 12, 1997.

Thus, the question presented is whether the two years began to run from March 26, 1997, when decedent received the Conditional Receipt upon tender of the first premium payment, or whether it began to run on April 12, 1997, the issue date of the Policy.

■ Although defendant is correct that here, as in *Malone*, the Conditional Receipt is not incorporated into the Policy by reference, we nevertheless decline to follow the *Malone* court's analysis because in Illinois, unlike in New York, the application (which is the basis for issuing the Conditional Receipt) is incorporated into the Policy by statute. According to section 224(c) of the Illinois Insurance Code, the application and the policy *together* constitute the entire "contract." Because the Illinois legislature employed the singular "contract," rather than the plural "contracts," the Conditional Receipt and the Policy at issue here cannot be viewed as separate insurance contracts with two separate policy issue dates.

Moreover, section 224(c) provides that the clock starts to run on the "contract \*\*\* date," *not* on the policy "issue date." 215 ILCS 5/224(c) (West 1998). By any reasonable analysis, the "contract \*\*\* date" is the first date on which the parties entered into any part of the "contract." In contrast, the "issue date" is an arbitrary date selected at the sole discretion of the insurance company. The Illinois legislature's selection of the term "contract \*\*\* date," rather than the term "issue date," evinces an intent to impose a limitations period upon an insurance company's ability to contest a life insurance policy, which the insurance company is without ability to extend by creative drafting. As this court has previously noted, any attempt by an insurance company to dilute or diminish statutory provisions applicable to

its method of insurance is contrary to public policy, and any conflict between statutory and policy provisions will resolve in favor of the statutory provisions. *DC Electronics, Inc. v. Employees Modern Life Co.*, 90 Ill. App. 3d 342 (1980). Indeed, as early as 1911, this court stated:

> "Where an intent to make the application a part of the policy appears, the court, no matter what the phraseology may be, will read the application into the policy of insurance. [Citations.]
>
> If the language of an insurance policy is ambiguous, it will be most strongly construed against the insurance company and in favor of the insured. A clause in an insurance policy providing that the policy shall be incontestable, except for non-payment of premiums, 'if this policy shall have been in continuous force after two years from the date hereof,' will be held to refer to the date of the policy and not to the date of its delivery, even though there is a clause providing that the policy shall not be operative or binding until payment of the first premium and delivery of the policy, which was at a date later than the date of the policy. [Citation.]" *Arrowsmith v. Old Colony Life Insurance Co.*, 164 Ill. App. 44, 45-46 (1911).

Here, it is clear that, by enacting section 224(c), the Illinois legislature intended to place a two-year limit on an insurance company's ability to contest a life insurance policy and that the two-year period was to begin running when the insurance company accepted the insured's application and payment of the first premium, *not* on an "issue date" arbitrarily selected by the insurance company. It is apparent that the Illinois legislature believed this time frame gave insurance companies adequate opportunity to investigate the statements made by the insurance applicant and to discover any potential fraud therein. Morever, it is apparent that the Illinois legislature believed this time frame to be in accord with the public policy of protecting the public from unscrupulous insurance companies. Accordingly, we reject the analysis and holding of *Malone v. North Atlantic Life Insurance Co.*, 256 A.D. 2d 1077, 1078, 682 N.Y.S.2d 760, 761 (1998), and its progeny, in favor of the analysis and holding of *Holtze v. Equitable Life Assurance Society of the United States*, 548 F.2d 1037 (D.C. Cir. 1976), and its progeny. Thus, although we do not condone the actions of Albert Lauer in submitting his obviously fraudulent application, we are bound to conclude that the two-year incontestability period began to run from March 26, 1997, when he received the Conditional Receipt upon tender of the first premium payment, which exchange gave rise to a contract of insurance based upon Albert Lauer's application.

Defendant's reliance on the Seventh Circuit Court of Appeals case, *State Mutual Life Assurance Co. v. Stapp*, 72 F.2d 142 (7th Cir. 1934),

is equally inapposite. In *Stapp*, the federal court interpreted Illinois law and determined that the date on the face of a life insurance policy, not the actual date when coverage took effect through the policy delivery and payment of the first premium, governed the policy provision that the policy should be void if the insured should commit suicide within two years of from the "date" thereof. The suicide clause in *Stapp* limited the hazards insured against by excluding death by suicide for a specified period, whereas the incontestability clause at issue in the instant case deals with the validity of the coverage for means of death not so excluded. The former is a coverage clause; the latter a validity clause. Accordingly, the ruling in *Stapp* is inapplicable to the instant case.

Having concluded that the two-year incontestability period began to run from March 26, 1997, such that the Policy was incontestable on the date of Albert Lauer's death on March 28, 1999, we consider whether the Policy is nevertheless voidable for fraud in the inducement.

The central meaning of the term "incontestability" is "that the insurer may not contend the policy is voidable because the insured misrepresented or concealed matter in taking it out." W. Young, *"Incontestable"—As to What?*, 1964 U. Ill. L.F. 323, 324. As Justice Cardozo explained, "A contest is prohibited in respect of the validity of the policy ***. [The statute] means only this, that within the limits of the coverage, the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken," but by the same token "is not a mandate as to coverage, a definition of the hazards to be borne by the insurer." *Metropolitan Life Insurance Co. v. Conway*, 252 N.Y. 449, 452, 169 N.E. 642, 643 (1930). Misrepresentation by the insured is an "inception" defense, one that does not relate to the hazard to be borne. The hazard insured against—the insured event—is simply death. Accordingly, the Policy is not voidable for fraud in the inducement.

For the foregoing reasons, the order of the circuit court dismissing plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)) is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CAMPBELL, P.J., and BUCKLEY, J., concur.